[No. AO18409. First Dist., Div. Three. Jan. 19, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES JORDAN WOJAHN, Defendant and Appellant.

1026

**COUNSEL**

Annette Lombardi, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FEINBERG, J.**—Appellant was charged with attempted murder (Pen. Code, §§ 187, 664), burglary (Pen. Code, § 459), assault with a deadly weapon (Pen. Code, § 245, subd. (a)), robbery (Pen. Code, § 211), forced oral copulation (Pen. Code, § 288a, subd. (c)), and rape (Pen. Code, § 261, subd. (2)); there were allegations as to the use of a deadly weapon (a knife) in the commission of the burglary and robbery (Pen. Code, § 12022). In addition, a prior conviction, forced oral copulation (Pen. Code, § 288a), was alleged. Appellant pleaded not guilty, denied the prior conviction and

moved for a bifurcated trial on the issue of the prior conviction. The motion was granted.

Appellant was tried before a jury and convicted on all substantive charges. However, as we shall discuss in more detail below, the jury was discharged without having had the issue of the prior conviction put before it. Subsequently, that issue was tried, over appellant's objection. After appellant's objection was overruled, he waived jury. The court then tried the issue of the prior conviction and found it to be true.

Appellant was sentenced to the upper term of nine years for attempted murder, and consecutive sentences of one year for robbery and eight years for rape. The three-year aggravated term for burglary and four years for aggravated assault were stayed. An additional 5 years was imposed for the prior, for a total of 23 years less 259 days of credit.

Appellant contends that the trial court erroneously: (1) admitted testimony about a prior jail sentence in the guilt phase; (2) admitted testimony in reference to evidence lost by the police; (3) imposed a consecutive sentence for the robbery conviction without expressly stating the factors upon which it based its determination; and (4) the trial court proceeded, without jurisdiction, to try him on the prior after having dismissed the jury, in violation of his constitutional rights against double jeopardy and a speedy trial. (Pen. Code, § 1025.) For the reasons set forth below we affirm the judgment as modified to strike the five-year enhancement for the prior.

The record reveals the following pertinent facts: On January 2, 1982, appellant entered the Good Finds Store in Boyes Hot Springs where the victim, Rosie Melero, was working alone. He robbed her at knife point and after securing the doors, bound her hands, orally copulated and forcibly raped her. Appellant, who was wearing brown cloth gloves, then attempted to suffocate Ms. Melero. She wrestled and begged for her life, and convinced him to spare her life.

I

■■ ■■ Appellant first contends that the trial court erred to his prejudice by admitting testimony implying a prior jail confinement despite the bifurcation order prohibiting reference to the prior conviction during the guilt phase. The record indicates that the victim stated that during her struggles with appellant she asked him why he was doing this to her. He gave two reasons, (1) "he was tired and frustrated with living in Boyes Hot Springs" and (2) "so he could go back to jail . . . the only place where he felt comfortable."

■ The testimony was relevant in two aspects on the crucial issue of identification in that appellant lived in Boyes Hot Springs and had been previously in jail. The grant of a bifurcated trial on the prior conviction issue merely guaranteed appellant that no evidence of the alleged prior *felony* would be presented during the guilt phase. The disputed testimony and resulting stipulation that appellant was previously in jail is not tantamount to evidence of a prior felony conviction. As the trial court noted, a person can be jailed for traffic offenses, misdemeanors, or pending a trial. Therefore, the admission of the testimony was not erroneous.

■ In any event, the prosecution presented ample evidence to prove that appellant was the perpetrator. The victim positively identified him in open court. The description of the perpetrator she gave to the sheriff's deputy matched the appellant. Both the victim and the store owner recognized appellant as a vendor with whom they had previously done business in the store. When apprehended appellant had in his possession brown cloth gloves like those described by the victim, as well as the approximate amount of money taken in the robbery. Appellant's blood type matched the blood type found from the semen on the bed spread used during the rape and in the victim's panties. Appellant admitted ownership of a knife like the one described by the victim. Furthermore, appellant admitted that he had sold things to the store.

Given this overwhelming evidence it is not reasonably probable that the exclusion of the testimony relating to appellant's desire to return to jail would have resulted in a more favorable outcome. Thus, even if it was error to admit this portion of the testimony, it was not prejudicial error.

## II

■ Appellant's second contention is that the trial court erroneously admitted testimony in reference to evidence lost by the police, in violation of *People* v. *Hitch* (1974) 12 Cal.3d 644, 652-653 [117 Cal.Rptr. 9, 527 P.2d 361]. The record reveals that during the trial the victim testified that she recognized the appellant from a previous business transaction in which appellant sold some clothing racks to the store and a rubber boat to her. She states that she "asked him to fill out a purchase slip . . . I wrote across [the slip] clothes racks, thirty dollars, and I requested that he fill out the top portion with his name, his address, and his phone number." This receipt was given to the police but lost. The trial court ruled that the contents of the receipt could not be introduced into evidence by secondary evidence.

Appellant argues that the court's sanction came too late because the victim had already testified about the existence of the receipt, and that this reference deprived him of a fair trial.

The trial court was faced first with a "best evidence" issue and, secondly, a *People* v. *Hitch* issue. The best evidence rule requires the admission of the original writing to prove the content of that writing (Evid. Code, § 1500). If the original is lost, as in the instant case, Evidence Code sections 1501 and 1505 allow the admission of either a copy or oral testimony as to the content of the writing.

■ However, our Supreme Court ruled in *People* v. *Hitch, supra,* 12 Cal.3d 641, 645-653, that when evidence cannot be disclosed as a result of intentional but nonmalicious destruction by the investigative officials due process requires exclusion of the evidence unless the prosecution meets the burden of demonstrating that the involved governmental agencies have established, enforced, and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the evidence. This rule was extended to the "negligent loss of evidence" in *People* v. *Swearingen* (1978) 84 Cal.App.3d 570, 574-575 [148 Cal.Rptr. 755]. ■ Thus the court here properly excluded all testimony about the contents of the receipt.

Appellant mistakenly argues that the trial court excluded any reference to the receipt and the victim's testimony about the existence of the receipt violated the court's ruling. The record reveals that the court's ruling was to exclude the admission of any secondary evidence about the *contents* of the receipt. The victim's testimony only refers to the existence of the receipt, not to its contents. In this connection, appellant further argues that the trial court abused its discretion by refusing to grant either his motion for mistrial or for dismissal. ■ "[A] motion for a mistrial," like a motion for dismissal, "presupposes that the effect of the objectionable evidence 'is so prejudicial as to be incurable by striking it and admonishing the jury to disregard it.'" (*People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 547 [166 Cal.Rptr. 45].)

■ To demonstrate the degree of harm caused by the victim's reference to the receipt appellant points to the jury's request, during deliberations, for clarification as to whether the receipt had supplied the police with the appellant's name. After rereading the testimony, the court instructed the jury, "[y]ou have to decide the case based solely on whatever evidence that was brought before you . . . if something isn't touched on in the testimony before you I can't add anything to it and you must decide."

We find that the trial court's *Hitch* sanction was appropriate; the victim's testimony did not violate this sanction; there is no harm evidenced which was sufficient to warrant dismissal or a mistrial.

## III

██ Appellant next erroneously contends that the trial court imposed a one year consecutive sentence for the robbery without stating on the record the factors in aggravation that warranted the consecutive terms. When directing that any sentence be served consecutively to another, the sentencing judge must state his reasons on the record. (*People* v. *Anjell* (1979) 100 Cal.App.3d 189, 203-204 [160 Cal.Rptr. 669].)

The record reveals that the sentencing court expressly stated the factors which warranted consecutive terms; namely separate and distinct objectives, premeditation, and planning. Appellant's contention, therefore, fails.

## IV

The final contention presents a question of first impression in California. ██ He contends that the trial court was without jurisdiction to try him on the prior conviction after having dismissed the jury, as he was constitutionally entitled to the same jury in both parts of the bifurcated proceeding. He also contends that the procedure violated the prohibition against double jeopardy and his right to a speedy trial.

The record reveals that after returning its verdict on the substantive offenses and before any evidence as to the truth of the prior conviction was offered, the jury was mistakenly discharged. Pursuant to the prosecution's motion and over the objection of appellant, some three weeks later, the court instituted a new proceeding to determine the truth of the prior. Appellant then waived his right to a jury trial, offered no evidence, and the court entered a finding of true as to the prior.

Even before *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191], the trial of prior conviction allegations were markedly different from ordinary sentencing hearings. ██ The Penal Code "affords an accused advance notice that his prior conviction is in issue (§§ 969, 969a) and gives him an opportunity to contest the fact and validity of the prior conviction to a jury (§ 1025) which will be instructed that the prosecution must prove the former conviction beyond a reasonable doubt. [CALJIC No. 17.25; citations omitted]." (*People* v. *LoCicero* (1969) 71 Cal.2d 1186, 1192 [80 Cal.Rptr. 913, 459 P.2d 241].) Section 1158 requires the jury to return a special verdict.

██ There is no doubt but that jeopardy had attached. The question is whether jeopardy had attached to the issue of the truth of the allegation of the prior conviction pleaded as a penalty enhancement.

The People argue that *allegations* of the penalty enhancements are not subject to a *plea* of double jeopardy. While true, the proposition is neither dispositive nor helpful. For, to repeat, the question is whether jeopardy had attached to the penalty enhancement alleged in the accusatory pleading *when the jury was sworn to try the cause.*

The People argue that jeopardy did not attach to the issue of the truth of the prior conviction because the issue had been "severed" at the request of appellant.

 Implicit in this argument is the notion that "bifurcation" and "severance" are synonymous. We disagree. "Bifurcation" of a jury trial, as we understand it, means that different issues in a case will be tried *seriatim* by the *same* jury with the jury returning separate verdicts as to the issues bifurcated. There is but one trial. "Severance," on the other hand, means that different issues or different defendants in one case have been split off to be tried separately by *different* juries. Here, there is *more* than one trial.

 Thus in a criminal case where two or more defendants are jointly charged, Penal Code section 1098 which the People erroneously believe supports their argument, provides that the defendants "must be tried jointly [i.e., in one trial], unless the court order *separate* trials . . ." (italics added). This is "severance" not "bifurcation." (See, too, Pen. Code, § 954 involving multiple counts against one defendant.)

 The People point to Penal Code section 190.4, subdivision (c) as another illustration that different juries can decide different issues (guilt, special circumstances, sanity and penalty in special circumstances murder cases) in the same case. The section does provide for a bifurcated trial on these issues but it specifically provides that upon a showing of *good cause,* the court may discharge the jury that returned the guilty verdict and impanel a new jury to try the remaining issues. It is apparent therefore that the section provides both for bifurcation and, upon a showing of good cause, severance. We need not consider what role double jeopardy might play in this situation for the People's attempt to draw an analogy between Penal Code section 190.4, subdivision (c) and Penal Code section 1025 must fail.

 It must fail because Penal Code section 1025,[1] the applicable section here, does *not* contain any provision permitting the trial court to impanel a

---

[1] Penal Code section 1025: "When a defendant who is charged in the accusatory pleading with having suffered a previous conviction pleads either guilty or not guilty of the offense charged against him, he must be asked whether he has suffered such previous conviction. If he answers that he has, his answer must be entered in the minutes of the court, and must, unless withdrawn by consent of the court, be conclusive of the fact of his having suffered such previous conviction in all subsequent proceedings. If he answers that he has not, his answer must be entered in the minutes of the court, and the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty, . . ."

jury to try the issue of the prior conviction, for good cause or any cause, different from the jury impanelled to try the criminal offense alleged. On the contrary, the Legislature has said, as plainly as can be said in legislative jargon, that the jury that convicts *must* try the issue of whether or not the defendant suffered the alleged prior conviction. The answer of the jury shall be in the form of a special verdict or finding (Pen. Code, § 1158).

■■■ "The law is established in California that when a defendant is charged in an information or indictment with having suffered a previous conviction, if he denies at the time of his arraignment that he has suffered such previous conviction the issue thus joined must be tried by the jury which tries the issue upon his plea of not guilty to the offense charged in the information or indictment (Pen. Code, § 1025)." (*People* v. *Kingsbury* (1945) 70 Cal.App.2d 128, 131 [160 P.2d 587].) ■■■ Though the trial in *Kingsbury* was unitary, we see no reason why the rule should be different where the trial, as here, was bifurcated. Thus, when the jury was sworn to try the case, it was sworn to try all aspects of the case.

Almost 90 years ago our Supreme Court in *People* v. *Eppinger* (1895) 109 Cal. 294 [41 P. 1037], was confronted with the following situation: The defendant was charged with a crime and a prior conviction. He was convicted of the crime but the jury failed to make a finding or return a special verdict as to the truth of the prior conviction. The court held that the verdict of the jury must be taken as a verdict of guilt as to the crime charged "and in favor of the defendant upon the question of [the] prior conviction." (At p. 298.)

In more modern times, in *People* v. *Morton* (1953) 41 Cal.2d 536 [261 P.2d 523], the court approved of the holding in *Eppinger, supra,* stating that it was the proper disposition "[where] the jury did not make the specific finding required by Penal Code, section 1158." (At p. 544.)

Finally, in this context, in *People* v. *Bracamonte, supra,* 119 Cal.App.3d 644, wherein the bifurcated procedure employed here was mandated, the court pointed out that the bifurcated procedure was not inconsistent with Penal Code section 1025 in that the section does *not* require the issues of guilt and the alleged prior conviction to be tried *simultaneously. (Id.,* at pp. 652-653.) The section only requires that the two issues be tried by the *same* jury.

The People quote from *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 515-516 [183 Cal.Rptr. 647, 646 P.2d 809] to the effect that central to the objective of the double jeopardy proscription is the notion that the prosecution should not be given the opportunity of a second trial in order to marshal evidence it failed to provide at the first trial. As the People point out, the case at bench is not such a case. ■■■ But, as the court in the

same *Stone* case noted, another "aspect of the double jeopardy protection [is] the defendant's '"valued right to have his trial completed by a particular tribunal"'' [Citations.]" (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 516, fn. 7.) Thus, in *Jackson* v. *Superior Court* (1937) 10 Cal.2d 350 [74 P.2d 243, 113 A.L.R. 1422], the trial court made an error (objected to by the defendant,) in the course of impanelling the jury. Nevertheless, the jury was impanelled and *sworn.* At that point, the prosecutor advised the trial court that in his opinion, the court had erred, and the error could be prejudicial to the defendant. The prosecutor thereupon moved for a mistrial. The defendant opposed the motion. The judge declared a mistrial.

The Supreme Court held that though not even the charge had been read to the jury, the moment the jury was sworn, jeopardy had attached. Because a mistrial had been improperly declared, the defendant could not be tried on the charge. Obviously, this, too, was not a case where the prosecution would have been afforded a second trial for the purpose of mustering evidence it did not present at the first trial.

We hold, therefore, that when the jury was sworn, it was sworn to try both the issue of guilt of the substantive criminal offense *and* the issue of the truth of the alleged prior conviction. Consequently jeopardy attached to *both* issues. When the trial court improvidently discharged the jury after it returned a guilty verdict but before the issue of the prior conviction was tendered to it, double jeopardy considerations prohibited the impanelling of a new jury to try the issue of the prior conviction. Having so held, we need not and therefore, do not, reach appellant's assertion that he was denied a speedy trial on the issue of the prior conviction.

It may be that the result of our decision is that something less than a full measure of justice will have been done in this case but as our Supreme Court said in *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345], "'Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power.'" (At p. 718.)

The trial court is directed to amend its judgment by striking the five-year sentence enhancement and as so amended, the judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1984.