[No. D007151. Fourth Dist., Div. One. Apr. 21, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN JOSEPH RICE, Defendant and Appellant.

**COUNSEL**

Diane C. Campbell for Defendant and Appellant.

Edwin L. Miller, Jr., District Attorney, Terri M. Schools and D. Michael Ebert, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—John Joseph Rice was convicted by a jury of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)). The jury also found Rice had suffered two prior convictions for driving under the influence (former Veh. Code, § 23102, subd. (a)). On appeal, Rice contends the trial court should have granted his Penal Code section 1118.1 motion for acquittal, erred in instructing the jury and should have struck prior convictions on the grounds of former jeopardy and collateral estoppel.

### FACTS

At about 6 p.m. on May 5, 1985, Officer Findlay was on duty in a marked patrol car on Interstate 5 when Rice accelerated on his motorcycle and wove through three lanes of traffic. The freeway traffic at this time was moderate to heavy. Findlay paced Rice for about a half mile at 75 miles per hour.

Findlay turned on his red spotlight and "wig-wag" lights (flashing high beam headlights that alternate). Rice accelerated and changed lanes. His speed increased to 80 miles per hour. Eventually, Rice slowed and came to a stop at a freeway exit about two miles from the point where the officer had first activated his lights.

The officer asked Rice whether he had had anything to drink. Rice said he had drunk a bottle of beer. Findlay noticed Rice had the odor of beer on his breath, his speech was slurred, his eyes were bloodshot and watery, his pupils were dilated and he was unsteady on his feet.

Rice failed several field sobriety tests. He was transported to the Vista jail where a breath test showed his blood-alcohol level to be .11. An expert testified that persons with a blood-alcohol level of .10 or greater are too impaired to drive safely and that all persons with a blood-alcohol level of .10 or more are under the influence. The expert additionally testified Rice's driving pattern, objective symptoms and performance on the field coordination tests were consistent with a person being under the influence of alcohol.

DISCUSSION

I

Rice contends the court erred in failing to grant his Penal Code section 1118.1 motion for acquittal. ■ The test to be applied by the court under section 1118.1 is ". . . the same test applied by an appellate court in reviewing a conviction: whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged [citations]." (*People* v. *Valerio* (1970) 13 Cal.App.3d 912, 919 [92 Cal.Rptr. 82].)

■ Where the trial court has denied the motion, the appellate court must assume in favor of the judgment every fact from which the jury could have reasonably deduced from the evidence that the offense was committed by the defendant. (*Ibid.*) The test on appeal is not whether the appellate court believes the evidence at trial established the defendant's guilt beyond a reasonable doubt but whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *(People* v. *Towler* (1982) 31 Cal.3d 105, 117 [181 Cal.Rptr. 391, 641 P.2d 1253], original italics.)

■ Here, the evidence of the officer's observations of Rice when initially contacted (the odor of beer on his breath, his slurred speech and unsteadiness), Rice's poor performance on the field sobriety tests, his blood-alcohol level of .11 after he was arrested and the expert's opinion was sufficient to support a conviction. The trial court properly denied Rice's motion for acquittal.

II

■■ Rice contends the court erred in instructing the jury when the jury sought "clarification of the charge."

As requested by Rice, the court gave CALJIC No. 16.831 which provides: "A person is [under the influence of intoxicating liquor] [under the combined influence of intoxicating liquor and a drug] when as a result of drinking such liquor [and using a drug] his physical or mental abilities are impaired to such a degree that he no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances.

"[If it is established that a person is driving a vehicle [under the influence of intoxicating liquor] [under the combined influence of intoxicating liquor

and a drug], it is no defense that there was some other cause which also tended to impair his ability to drive with the required caution.]"

Over Rice's objection, the trial court also gave three other instructions: CALJIC Nos. 16.832, 16.832 (1981 Rev.) and 16.835. These instructions provide in relevant part: "The manner in which a vehicle is being operated does not itself establish that the driver of the vehicle either is or is not [under the influence of intoxicating liquor] . . . .

"However, the manner in which the vehicle is being operated is a factor to be considered in light of all the proved surrounding circumstances in deciding whether the person operating the vehicle was or was not [under the influence of intoxicating liquor] . . . ." (CALJIC No. 16.832.)

"The manner in which a vehicle is being operated is not sufficient in itself to establish that the driver of the vehicle either is or is not [under the influence of an alcoholic beverage] . . . .

"However, the manner in which the vehicle is being operated is a factor to be considered in light of all the proved surrounding circumstances in deciding whether the person operating the vehicle was or was not [under the influence of an alcoholic beverage] . . . ." (CALJIC No. 16.832 (1981 Rev.).)

"If you find that the defendant was offered and refused a choice of a blood, urine or breathalyzer sobriety test after he had been made aware of the nature of such tests and their purpose, such refusal is not sufficient, standing alone and by itself, to establish the guilt of the defendant but it is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether defendant is guilty or not guilty. The weight to which such a circumstance is entitled and whether or not such conduct shows a consciousness of guilt are matters for your determination." (CALJIC No. 16.835.)

The court should not have given both versions of CALJIC No. 16.832; one was sufficient. The court also should not have given CALJIC No. 16.835 since there was no evidence Rice refused to take a test but merely that he was unable to complete a urine test and instead took a breath test. However, we find these errors were not prejudicial. This was not a close case. The evidence of Rice's guilt was compelling.

As given, the two versions of CALJIC No. 16.832 correctly stated the law and differed in no manner pertinent to Rice's case. The 1981 version differs from its predecessor by adding references to drugs, a factor not at issue at trial. In light of the evidence and relatively benign nature of the error, we do not believe these expressions of the law, however redundant, could have prejudiced Rice.

As to CALJIC No. 16.835, error appears since the evidence was clear Rice did not refuse to take a test but rather was unable to complete it and willingly took a different test.[1] Neither the prosecutor nor defense argued Rice's failure to complete the urine test as evidence from which an inference of guilt could be drawn. The instruction itself did not direct the jury to find Rice refused to take a test or direct the jury to draw an inference of guilt from Rice's failure to complete the urine test. Under these circumstances, and in light of the weight of the evidence against Rice, we conclude it is not reasonably probable a different result would have occurred had the instruction not been given.

## III

■ Rice contends the trial court should have stricken one of his prior convictions because in a previous trial the jury had found the prior convictions "not true."[2]

■ The prosecution must specifically allege the defendant has served a prior conviction and prove the truth of the allegation beyond a reasonable doubt. (Pen. Code, §§ 969, 1025; *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 652 [174 Cal.Rptr. 191].) The defendant has the right to have a jury determine the question. (*Id.* at p. 653.) "[T]he question whether or not [the defendant] has suffered such previous conviction must be tried

---

[1] Officer Findlay testified: "A urine test, a proper urine test as my understanding goes, the person is required to urinate once into a sample bottle, and then to empty their bladder into the toilet, basically finish urinating into the toilet, then we wait for approximately 20 minutes and he is required to fill a second urine sample bottle. He was able to do the first part of it, but the second part he was unable to complete." Findlay stated "[S]ince he was unable to complete that test, he was required to take one of the additional tests, either a blood test or a breath test. . . . [¶] [H]e choose to take a breath test."

[2] The prosecutor represented that in the prior action one of the exhibits properly before the jury was mistakenly withdrawn ". . . so that when this counsel argued identification of name and date of birth on the two priors to the jury expecting of course that they would relate back to the exhibit, the GCI test with the strip of graph paper attached to it, that they would have found there the very same name and the date of birth 7-9-49. It was afterwards that we found out the jury was mistakenly deprived of those exhibits."

by the jury which tries the issue upon the plea of not guilty . . . ." (Pen. Code, § 1025.)

■ The purpose of imposing sanctions for prior convictions is to punish and deter recidivist behavior. As the court explained in *People* v. *Johnson* (1979) 95 Cal.App.3d 352, 357-358 [157 Cal.Rptr. 150]: "The law is well established that, . . . the increased penalty for a prior is attributable solely to the new, rather than the former, crime and its purpose is to discourage recidivist criminal conduct [citations]. As stated in *People* v. *Biggs* (1937) 9 Cal.2d 508, 512 . . ., 'it is the second or subsequent offense which is punished, not the first'; . . . "

Thus, when the defendant is on trial for one substantive offense and the prosecution charges one prior conviction, the issue before the jury is the defendant's *current* status, i.e., whether the defendant is *guilty* of the substantive offense and whether it is then *true* the defendant has a prior conviction. The jury is *not* asked to determine whether the defendant was "guilty" of the prior conviction or whether the prior conviction was validly obtained or is void.

Rice's argument is erroneously premised on a conclusion the previous jury's finding the priors were not true is the same as a finding the priors are invalid or void. As we have discussed above, the jury makes no such finding; *the jury's determination a prior is "not true" does not void the convictions* or take them off the books. (Compare *Baker* v. *State* (Ind. 1981) 425 N.E.2d 98.) A prior conviction is invalidated or voided by other means, e.g., a writ of habeas corpus.

Policy reasons also dictate rejection of Rice's argument. First, the Legislature requires a prior conviction be specifically charged and admitted or found true in the action for the new offense before any additional penalty based on the prior may be imposed. (Pen. Code, § 667.6, subd. (d).) The Legislature has thus rejected the application of collateral estoppel by the prosecutor to prior conviction and has, instead, required the prior to be specifically proven in the new action regardless of whether or not a previous jury found the prior "true." Under these circumstances, it would seem anomalous to allow the defendant to raise the collateral estoppel doctrine when the prosecutor cannot, particularly when the Legislature has stated its intent to have the issue specifically pleaded and litigated anew in the trial of the new offense. The Legislature has safeguarded the defendant's rights by

allowing the defendant repeated opportunities to litigate the truth of the prior.

Second, it would be anomalous to apply the doctrine of collateral estoppel to prevent litigation of the truth of an allegation the defendant has a prior conviction when the related doctrine of former jeopardy does not apply. (See *People* v. *Mink* (1985) 173 Cal.App.3d 766, 770-771 [219 Cal.Rptr. 291].) The doctrine of former jeopardy does not apply because the increased punishment is not due to the former crime but solely due to the new crime. Nor does the policy behind former jeopardy—preventing the government from harassing a defendant by initiating repeated actions involving the same charges—apply here. The enhancements are not government-initiated harassment of the defendant; the defendant's own conduct in committing a new offense triggers the charging of the enhancement.

Rice's reliance on *People* v. *Wojahn* (1984) 150 Cal.App.3d 1024 [198 Cal.Rptr. 277] is misplaced. The *Wojahn* court was faced with a situation where the trial court dismissed the jury after it had convicted the defendant of the substantive offense but before it had determined the truth of the prior conviction enhancements. The court held: ". . . when the jury was sworn, it was sworn to try both the issue of guilt of the substantive criminal offense *and* the issue of the truth of the alleged prior conviction. Consequently jeopardy attached to *both* issues. When the trial court improvidently discharged the jury after it returned a guilty verdict but before the issue of the prior conviction was tendered to it, double jeopardy considerations prohibited the impanelling of a new jury to try the issue of the prior conviction." (*Id.* at p. 1035.)

*Wojahn* turned on the requirement the statutory language stating one jury should try both the substantive offense and the prior (see Pen. Code, §§ 1025, 1158) and is to make the determination whether the new offense represents a repeat offense. ■■■ When the jury is not given the evidence on that issue nor asked to decide it but is, instead, dismissed, then double jeopardy bars recharging and further litigation just as relitigation of other factual matters relating to the substantive offense and the offender is barred (e.g., the fact the burglary was of a residence, or the defendant was armed, etc.).

■■■ We conclude the doctrines of double jeopardy and collateral estoppel do not bar the government from seeking to enhance a subsequent offense with a prior conviction that in a previous case a jury found was "not true"

because the "not true" finding is not equivalent to a finding the prior conviction did not occur, is void or otherwise invalid.

#### DISPOSITION

The judgment is affirmed.

Todd, J., and Staniforth, J.,* concurred.

A petition for a rehearing was denied May 12, 1988, and appellant's petition for review by the Supreme Court was denied July 28, 1988.

.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.