[No. A046986. First Dist., Div. Five. July 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY LAMAR DEE, Defendant and Appellant.

**COUNSEL**

Marylou Hillberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KING, J.**—In this case we are compelled to strike a prior conviction sentence enhancement because of trial counsel's error in waiving a jury trial on the enhancement allegation after the judge prematurely discharged the jury.

An information charged Ricky Lamar Dee with possession of cocaine (Health & Saf. Code, § 11350). It also alleged a prior conviction and prison term (Pen. Code, § 667.5, subd. (b)). Trial of the charged offense and the prior conviction allegation was bifurcated. A jury convicted Dee of the charged offense.

Once the verdict was read and the jury was polled, the court discharged the jurors and advised them, "You are free to talk about this case with whomever you want to talk about it now. The admonition is off." After thanking the jurors for their service, the court concluded, "So I will excuse you, and you are free to leave at this time."

Thereafter, the reporter's transcript states that the proceedings occurred "without jury." The court began to refer the matter to the probation department, but then said, "Oh, guess what. Better get them back here. We have some priors that you have a right to have a jury decide. [¶] . . . I forgot that there were some priors." Defense counsel, however, waived a jury trial and stated that Dee was willing to admit the prior conviction allegation. Dee then did so.

The court sentenced Dee to the middle term of two years for possession of cocaine and a one-year enhancement for the prior conviction.

Appellate counsel requested independent review under *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. ■■ We determined that an arguable issue was presented, and directed further briefing as to (1) whether the doctrine of double jeopardy precluded a jury trial on the prior conviction allegation after the jury was discharged, and (2) if so, whether trial counsel erred in waiving a jury trial on the prior conviction allegation.

In *People* v. *Wojahn* (1984) 150 Cal.App.3d 1024, 1032-1035 [198 Cal.Rptr. 277], Division Three of the First Appellate District held that once a jury is sworn, jeopardy attaches to the issue of the truth of a prior conviction enhancement allegation, and thus the enhancement may not be imposed if the jury is mistakenly discharged before the enhancement allegation is tried.

A troika of decisions addressed *Wojahn* between April 1989 and January 1990. The first was *People* v. *Laury* (Cal.App.) A043042 (since depublished), in which Division Four of this court disagreed with *Wojahn*; the panel held that jeopardy does not attach to the prior conviction allegation, and thus a newly impaneled jury may determine the truth of the allegation. The next case was *People* v. *Casillas* (Cal.App.) A043679 (also depublished), in which Division Three reexamined its decision in *Wojahn*; the majority opinion followed *Wojahn,* but separate opinions by two of the justices stated their disagreement with *Wojahn* and expressed approval of the jeopardy analysis in *Laury*.[1] Finally, in *People* v. *Hockersmith* (1990) 217 Cal.App.3d 968, 972-977 [266 Cal.Rptr. 380], Division Three of the Fourth Appellate District agreed with *Wojahn,* disagreed with *Laury*, and held that jeopardy attaches and bars retrial of a prior conviction alleged as a basis for probation ineligibility.

The Supreme Court denied a petition for review in *Laury* on July 20, 1989. There was no petition for review in *Casillas,* which therefore became final on January 16, 1990. A petition for review in *Hockersmith* was filed on March 6, 1990. Then, at one fell swoop on April 26, 1990, the Supreme Court denied review in *Hockersmith* and depublished both *Casillas* and *Laury,* which had long since become final and were not even before the court. This leaves *Hockersmith* as the only published post-*Wojahn* opinion.

The message from the Supreme Court is obvious: *Hockersmith* and *Wojahn* were correct, and *Laury* and the plurality in *Casillas* were wrong. There is no other fathomable reason for the Supreme Court's action.

It has been suggested that although a denial of review is not an expression on the merits (see Advisory Com. Comment, Cal. Rules of Court, rule 28), it is not "without significance" as to the Supreme Court's views. (*In re Eli F.* (1989) 212 Cal.App.3d 228, 234-235 [260 Cal.Rptr. 453], quoting

---

[1] Justice Feinberg wrote the opinion in *Wojahn,* in which Justices White and Barry-Deal concurred. In *Casillas,* Justice White wrote the majority opinion; Justice Barry-Deal explained in a concurring opinion that she now believed the jeopardy analysis in *Wojahn* had been incorrect but felt the same result was statutorily mandated (Pen. Code, § 1025 [prior must be tried by same jury that tries guilt]); and Justice Merrill expressed disagreement with *Wojahn* and dissented on the enhancement issue.

*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865].) Additionally, it is generally accepted that most depublication occurs because the court considers the opinion to be wrong in some significant way, usually in reasoning and sometimes in result as well. When, as here, the Supreme Court uses *both* devices to deal with conflicting opinions, letting one remain published and depublishing the others, it is at least "fairly clear" that the court approves of the opinion that remains published and disagrees with the others. (Grodin, *The Depublication Practice of the California Supreme Court* (1984) 72 Cal.L.Rev. 514, 515, 521-522.) In the present context that conclusion is inescapable.

It is hardly unprecedented for the Courts of Appeal to seek implicit guidance from denial of review and depublication; we have just not been very candid about doing so. With the Supreme Court's greatly increased reliance on these procedures as tools for shaping the decisional law, perhaps the time has come for a bit more candor.

We take our cue from *In re Eli F., supra,* 212 Cal.App.3d at pages 234-235. The court in *Eli* followed *In re T.M.* (1988) 206 Cal.App.3d 314, 316 [253 Cal.Rptr. 535], which held that legislation precluding appeals from orders authorizing the filing of a petition to terminate parental rights (Welf. & Inst. Code, § 366.25, subd. (j)) applied retroactively and terminated appeals that were pending when the legislation became effective. *Eli* found great significance in the fact that the Supreme Court denied review in *In re T.M.,* and then a week later dismissed review in several other cases that presented the same issue. "Given the wholesale disposition of these cases in the face of an appellate interpretation of the new statute, we believe the Supreme Court has made its unspoken views clear." (*In re Eli F., supra,* 212 Cal.App.3d at p. 235.) Similarly, on the present issue the Supreme Court has made its views clear by depublishing *Laury* and *Casillas* and leaving *Hockersmith* as the only published decision addressing the propriety of *Wojahn.*

We recognize, of course, that having been depublished, the opinions in *Laury* and *Casillas* may not be "cited or relied on." (Cal. Rules of Court, rule 977(a).) We therefore give no citations to these two cases. We need not do so in any event, for they are described in the *Hockersmith* opinion. (217 Cal.App.3d at pp. 974-975.) Nor do we rely on them as precedent. Rather, we rely on the Supreme Court's orders of April 26, 1990, denying review in *Hockersmith* and depublishing *Laury* and *Casillas,* as indicating the Supreme Court's views on the correctness of *Hockersmith* and *Wojahn.*

We also recognize that, effective July 1, 1990, new rule 979(e) of the California Rules of Court provides that a depublication order "shall not be

deemed an expression of opinion of the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion." Because the depublication orders in *Laury* and *Casillas* predate rule 979(e), we conclude the new rule does not apply to those orders. We note, however, that given the manner in which the Supreme Court has dealt with the three post-*Wojahn* cases, to insist that those depublication orders are without significance would be to perpetuate a myth.

Turning to *Hockersmith,* we find its analysis persuasive in its own right, even without reference to the Supreme Court's action. ■ "In determining whether jeopardy attaches to a particular determination, the court focuses on two factors: 1) whether the procedures involved in adjudicating the issue are those traditionally associated with criminal trials, and; 2) whether the sanction imposed as a consequence of the determination is punitive in nature." (*People* v. *Hockersmith, supra,* 217 Cal.App.3d at pp. 972-973, citations omitted.) ■ The procedures involved in the adjudication of a prior conviction allegation include the alleging of the prior in the accusatory pleading, arraignment and plea on the allegation, the right to jury trial at which the prosecution has the burden of proving the elements of the prior beyond a reasonable doubt, and the requirement of separate findings on more than one allegation. These procedures "are clearly those traditionally associated with the trial of criminal cases." (*Id.* at p. 973.) The penalty involved in *Hockersmith*—mandatory incarceration—was held punitive in nature, and so must the penalty of sentence enhancement involved here. " 'The purpose of imposing sanctions for prior convictions is to punish and deter recidivist behavior.' " (*Ibid.,* quoting *People* v. *Rice* (1988) 200 Cal.App.3d 647, 654 [246 Cal.Rptr. 177].) Accordingly, *Hockersmith* concluded that *Wojahn* was decided correctly. (*Ibid.*) That analysis is unshakable.[2]

The Attorney General contends that *Hockersmith* and *Wojahn* are contrary to *People* v. *Morton* (1953) 41 Cal.2d 536 [261 P.2d 523]. In *Morton,* upon concluding there was insufficient evidence to support a finding of a prior conviction, the court did not require retrial on the primary offenses but remanded the cause for a limited retrial on the prior, stating there would be no prejudice from a limited retrial before a different jury because the issues of guilt and proof of the prior were "clearly severable." (*Id.* at p. 543.) As the court in *Hockersmith* explained, however, *Morton* is not precedent on the double jeopardy issue because, "Apparently, no one raised the

---

[2]The premature discharge of the jury also constitutes a statutory violation. (Pen. Code, §§ 1025 [prior must tried by same jury that tries guilt], 1164, subd. (b) [jury shall not be discharged until court verifies that jury has reached or is unable to reach a verdict on all issues, including "the truth of any alleged prior conviction whether in the same proceeding or in a bifurcated proceeding"].)

theory that double jeopardy would bar such a retrial since there is no discussion of that issue." (*People* v. *Hockersmith, supra*, 217 Cal.App.3d at p. 976.)

The Attorney General also relies on *People* v. *Shaffer* (1987) 195 Cal.App.3d 939 [241 Cal.Rptr. 99], in which the trial judge mistakenly discharged a jury before adjudicating a prior conviction allegation, but then reconvened the jurors before they had left the courtroom, judge's chambers or jury room. *Wojahn* did not apply in *Shaffer* because the trial judge had not lost control of the jurors and exposed them to outside influence before reconvening them to try the enhancement allegation. (195 Cal.App.3d at p. 942; see generally *People* v. *Hendricks* (1987) 43 Cal.3d 584, 597 [238 Cal.Rptr. 66, 737 P.2d 1350] [judge may reconvene jury after rendition of incomplete or irregular verdict if jury has not yet left the court's control].) The present case differs from *Shaffer*, however, in that this jury had evidently left the courtroom before the judge realized the prior conviction allegation had not yet been adjudicated. Having departed the courtroom with the court's permission to "talk about this case with whomever you want," the jurors had left the judge's control and become exposed to possible outside influence. The jury could no longer be reconvened.

 We have no choice, then, but to conclude that Dee's trial counsel erred in waiving a jury trial on the prior conviction allegation. Had counsel not done so, the one-year enhancement could not have been imposed. There can be no satisfactory explanation for counsel's conduct. (See generally *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1251 [255 Cal.Rptr. 569, 767 P.2d 1047].) Accordingly, the enhancement must be stricken. (*People* v. *Wojahn, supra*, 150 Cal.App.3d at p. 1035; see also *People* v. *Hockersmith, supra*, 217 Cal.App.3d at p. 977.)

We recognize, as did the court in *Wojahn,* that "the result of our decision is that something less than a full measure of justice will have been done in this case . . . ." (150 Cal.App.3d at p. 1035.) There is a special irony here, in that we are quite sure of the truth of the prior conviction allegation, since we affirmed that very conviction in 1986. But as explained in *Wojahn,* " ' "Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power." ' " (*Ibid.*, quoting *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 718 [87 Cal.Rptr. 361, 470 P.2d 345].)[3]

---

[3] Judging from the spate of cases on this point, it seems the premature discharge of a jury before a separate trial on the truth of a prior conviction allegation occurs with some frequency—enough, perhaps, to merit guidance by a Supreme Court opinion. Given the burden on today's harried trial judges, who often must try one case while a jury is still deliberating on

The judgment is modified by striking the one-year enhancement for the prior conviction, and is affirmed as modified.

Low, P. J., and Haning, J., concurred.

another, it is understandable that a judge might overlook the need for the separate trial of a prior conviction allegation in the earlier case. It is an unfortunate fact of judicial life that the volume of cases in California's trial courts has, in a very real sense, turned judges into workers on a production line. We hasten to add, however, that the prosecutor in this case bears equal responsibility for the error by failing to remind the judge of the need for the separate trial. The prosecutor should not have allowed the premature discharge to occur without comment.