[No. B052164. Second Dist., Div. Seven. Mar. 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENN GIVAN et al., Defendants and Appellants.

[No. B059522. Second Dist., Div. Seven. Mar. 20, 1992.]

In re DERRICK JAY JACKSON on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the Introduction, Facts and Proceedings, parts II and V and the Disposition are certified for publication.

1108

**COUNSEL**

Linn Davis and Steven L. Whiteside, under appointments by the Court of Appeal, for Defendants and Appellants.

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Donald E. de Nicola and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

### Introduction

**JOHNSON, J.**—Defendants were convicted of burglary and, following a bifurcated trial, each defendant was found to have suffered prior felony convictions. Defendants only appeal from the findings of prior felony convictions. We affirm.

### Facts and Proceedings Below

Defendants Glenn Givan, Derrick Jay Jackson, and Terry Louis Lee were charged with residential burglary, under Penal Code section 459. It was alleged the offense was a serious felony pursuant to Penal Code section 1192.7, subdivision (c) (18). It was further alleged the offense came within Penal Code section 462, subdivision (a) which prohibits probation except in unusual cases to anyone convicted of burglary of an inhabited dwelling house. It was also alleged that in committing the offense a principal was armed with a firearm.

The information was later amended to add allegations of four prior convictions against defendant Jackson, five prior convictions against defendant Givan, and three prior convictions against defendant Lee.

The defendants pled not guilty to the charges and denied the priors. The issue of the truth of the prior convictions was bifurcated from the trial on the primary offense. After a jury trial, the defendants were found guilty of first degree residential burglary. The jury found true that a principal was armed with a firearm.

Following the verdict, the district attorney told the court a file on defendant Givan's prior conviction was missing. The clerk assured the court that it would be available by the end of the week. The court acknowledged the file was missing and stated the clerk was doing everything possible to obtain the file. Immediately thereafter defendants requested to represent themselves during the trial on the prior convictions. The trial court denied the defendants' request. Defendant Givan then made a motion to have his counsel relieved on the ground he could do a better job. The court denied Givan's motion. Defendant Lee admitted the Penal Code section 667.5 prior conviction in count one to be true, and on the People's motion all other prior allegations against defendant Lee were stricken. The court continued the trials of Givan and Jackson on the prior convictions for one week.

On the scheduled date, defendants Jackson and Givan went to trial on their prior convictions. The jury found Givan had suffered four prior convictions and Jackson had suffered three prior convictions.

Before the start of the trial on the prior convictions, Jackson was shackled. Counsel for Jackson, out of the presence of the jury, requested the court to allow defendant to testify from the counsel table instead of the witness stand. The following colloquy took place between the court, Mr. Whitenhill (counsel for Jackson) and Mr. Bestard (counsel for Givan):

"Mr. Whitenhill: For convenience, may they do it where they are sitting as opposed to going to the witness stand?

"The Court: Makes it difficult for the Reporter, right?

"Mr. Whitenhill: We have two chains dragging around in front of the jury.

"Mr. Bestard: The jurors have already seen it.

"Mr. Whitenhill: They are aware of that, but I am not trying. . . .

"The Court: They have already convicted them.

"Mr. Whitenhill: I know, but they have the two of them hooked up. It's going to be interesting.

"The Court: Can we—

"Mr. Whitenhill: Shift them over to the D.A.'s seat. Just logistics. We have the Reporter come on this side and then we don't have to move them.

"Mr. Bestard: I have no objection to them going with chains.

"The Court: If they want to testify they can come around and testify in the normal manner."

Still shackled, Jackson took the witness stand to testify regarding his prior felony convictions. Under cross-examination by the People, Jackson testified that he was convicted of the crime of robbery in May of 1981, and entered into a plea bargain to another charge of robbery in August of 1981. Jackson also testified that in 1989 he was convicted of possession of a controlled substance. The jury found that Jackson's prior convictions were true.

On the day of sentencing, defendant Givan's counsel stated that defendant Givan wanted to make a *Marsden* motion. Defendant Givan argued the admission of certain evidence at the burglary trial reflected his counsel's incompetence. The court denied defendant Givan's motion.

At the sentencing hearing, defendant Lee was denied probation and ordered imprisoned for a total of six years. The court selected a midterm of four years on count one plus one-year consecutive on the Penal Code section 667.5 prior, plus one-year consecutive on the Penal Code section 12022 armed enhancement. Defendant Givan was sentenced to serve the upper term of six years, plus one year for the prior alleged pursuant to Penal Code section 667.5(b). On the record, the trial judge failed to state the reasons for choosing the upper term as to Givan. Defendant Jackson was sentenced to six years on the burglary, plus ten years for the prior convictions, plus one year for the prior prison term enhancement, and one year for the principal armed with a firearm enhancement, for a total of eighteen years.

On appeal, defendants do not challenge their convictions but raise issues pertaining to their sentencing. We affirm the judgments for the reasons set forth below.

## DISCUSSION

### I. THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING GIVAN'S *MARSDEN* MOTION.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. WHERE THE TRIAL OF THE PRIMARY OFFENSE AND AN ALLEGED PRIOR CONVICTION IS BIFURCATED, A MOTION TO PROCEED PRO SE IS UNTIMELY UNLESS IT IS MADE WITHIN A REASONABLE TIME BEFORE COMMENCEMENT OF THE TRIAL ON THE PRIMARY OFFENSE.

In *Faretta* v. *California* (1975) 422 U.S. 806, 818-819 [45 L.Ed.2d 562, 572, 95 S.Ct. 2525], the court held a criminal defendant has a constitutional right to self-representation under the Sixth and Fourteenth Amendments to the United States Constitution. The court placed the right to self-representation among the "rights . . . basic to our adversary system of criminal justice," as much a part of due process of law as the accused's right to notice of the charges, the right to call witnesses and the right to confront witnesses against him. (*Id.* at p. 818.) Although the defendant may conduct his defense to his own detriment, the defendant's choice must be honored out of " 'that respect for the individual which is the lifeblood of the law.' " (*Id.* at p. 834, quoting *Illinois* v. *Allen* (1970) 397 U.S. 337, 350-351 [25 L.Ed.2d 353, 362-364, 90 S.Ct. 1057] (Brennan, J., conc.).)

The *Faretta* opinion did not discuss the timing of the request for self-representation. However, in *People* v. *Windham* (1977) 19 Cal.3d 121, 128

---

*See footnote, *ante*, page 1107.

[137 Cal.Rptr. 8, 560 P.2d 1187] our Supreme Court held "that in order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to commencement of trial." When a defendant makes such a timely motion the trial court "must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so . . . ." When the request is not timely under the *Windham* standard, the decision whether to permit the defendant to discharge his attorney and represent himself is left to the trial court's sound discretion. (*Ibid.*)

In further clarifying what would constitute a "reasonable time" for purposes of asserting an unconditional right of self-representation, the *Windham* opinion explained the purpose of the requirement was to prevent the accused from using "the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request." (19 Cal.3d at p. 128, fn. 5.) However, because defense counsel are allowed to seek a continuance for the purpose of further trial preparation "it would be illogical to deny a motion for self-representation under such circumstances simply because the motion is made in close proximity to the trial." (*Ibid.*) When the lateness of the request and even the necessity of a continuance can be reasonably justified the trial court should grant the defendant's motion for self-representation. (*Ibid.*)

In *Windham*, the court upheld the denial of the defendant's request for self-representation because it was made just prior to the closing arguments in a unitary trial. The court stated that absent a pretrial motion the defendant waived his unconditional right to proceed by way of self-representation and the trial court did not abuse its discretion in denying the request at that late date. (19 Cal.3d at p. 130.) Similarly, in *People* v. *Hamilton* (1988) 45 Cal.3d 351, 369 [247 Cal.Rptr. 31, 753 P.2d 1109], the defendant requested self-representation in the midst of the jury's guilt phase deliberations and the court held the request untimely as to an unconditional right of self-representation. The court found no abuse of discretion in denial of the request.

■ The People argue the defendants in the present case were not entitled to self-representation as a matter of right because their requests were not made prior to the commencement of trial. The timeliness of a *Faretta* motion made prior to the commencement of a bifurcated trial on prior convictions appears to be a question of first impression. For the reasons set forth below,

we hold the defendants' requests were untimely and subject to the trial court's discretion.

Initially, we note a trial on prior convictions shares common procedural practices with an "independent" trial. The accused is entitled to a full-blown trial on the prior convictions even if he has pled guilty to the primary offense. (Pen. Code, § 1025.) Penal Code sections 969 and 969a afford an accused advance notice his prior conviction is in issue. Penal Code section 1025 grants the accused an opportunity to contest the fact and validity of the prior conviction to the jury. The jury is instructed the prosecution must prove the former conviction beyond a reasonable doubt. Penal Code section 1158 requires the jury to return a special verdict on the prior conviction. (See *People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1192 [80 Cal.Rptr. 913, 459 P.2d 241].)

In spite of these procedural requirements, we conclude a prior conviction trial is merely a "phase" of a larger proceeding. In a bifurcated trial, a defendant should make a decision about whether he wants to represent himself prior to the commencement of the "whole" trial. A request for self-representation at a reasonable time before the start of the trial on the primary offense is consistent with *Faretta* and *Windham*.

The People rely on *People v. Wojahn* (1984) 150 Cal.App.3d 1024 [198 Cal.Rptr. 277] and *People v. Hamilton, supra*, 45 Cal.3d 351, in asserting a bifurcated trial of the primary offense and the prior conviction should be treated as one trial for purposes of a *Faretta* motion. In *Wojahn* the issue was whether double jeopardy prevented trial of the prior conviction allegations before a new jury when the trial court mistakenly discharged the first jury after its verdict on the primary offenses. The People argued jeopardy did not attach to the issue of the truth of the prior conviction because that issue had been severed at the request of the defendant. The court rejected this argument, saying: " 'Bifurcation' of a jury trial, as we understand it, means that different issues in a case will be tried *seriatim* by the *same* jury with the jury returning separate verdicts as to the issues bifurcated. There is but one trial. 'Severance,' on the other hand, means that different issues or different defendants in one case have been split off to be tried separately by *different* juries." (150 Cal.App.3d at p. 1033, italics in original.)

We find *Wojahn*'s discussion of the difference between bifurcation and severance persuasive on the issue of timeliness of a *Faretta* motion. Where the prior convictions are at issue, the courts are aware of the possible prejudice the defendant may suffer when the jury is informed of the accused's alleged prior convictions. Bifurcating the trial, the court prevents the

jury from hearing the allegations of the prior conviction until a verdict has been reached on the primary offense, thereby protecting the defendant from possible unfairness. (See *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 651 [174 Cal.Rptr. 191]). The jury respectively hears and renders separate verdicts on the primary offense and the prior conviction to ensure the defendant a fair trial. In a bifurcated trial of the prior conviction, the trial court has not severed the trial to create two separate trials as an end in itself.

In *Hamilton*, a murder case, the defendant requested self-representation in the midst of the jury's guilt phase deliberations and the request was considered untimely. Rejecting Hamilton's argument the penalty phase of a capital trial amounts in actuality to a separate trial, the court stated: "First, as even the defendant acknowledges, the penalty phase has no formal existence but is merely a stage in a unitary trial. Second and more important, the connection between the phases of a capital trial is substantial and not merely formal." (45 Cal.3d at p. 369.) As an example of the substantial connection between the guilt phase and penalty phase of a murder trial the court cited the fact the same jury hears both phases (as it does in a trial on prior convictions). (*Ibid.*) The bifurcated trial's two-step process is a means to give the defendant a fair trial. The bifurcation of the trial merely holds the admission or trial of the prior convictions until after the primary trial so as not to prejudice the defendant's proceedings. In normal cases once the accused is found guilty on the primary offense the jury is immediately informed of the allegation of a prior conviction. Thereafter, the jury determines the truth of the prior conviction.

Even though we recognize the fundamental nature of the right to self-representation, the nature of a bifurcated prior conviction trial leads us to determine that the fundamental right to self-representation is not timely asserted after a verdict is rendered on the primary offense. A request is timely for purposes of invoking an absolute right to self-representation if it is made before the commencement of the trial on the primary offense.

In the case before us, all three defendants made a motion to proceed pro se *after* the jury returned its verdict on the primary offense. To assert the motion was timely because it was made prior to trial on the alleged prior convictions misconstrues the purpose of the prior conviction trial as discussed above. The defendants' motion was clearly made at midtrial. A midtrial motion for self-representation is addressed to the sound discretion of the court. (*People* v. *Windham, supra,* 19 Cal.3d at p. 130.) Thus we hold the defendants did not have an unconditional right to self-representation.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V. IT WAS ERROR TO PHYSICALLY RESTRAIN DEFENDANT JACKSON WITHIN VIEW OF THE JURY, AND IT WAS ALSO ERROR TO FAIL TO INSTRUCT THE JURY TO DISREGARD THE RESTRAINTS IN DETERMINATION OF GUILT; HOWEVER, THESE ERRORS WERE HARMLESS.

Defendant Jackson was convicted of first degree residential burglary. During defendant's bifurcated trial in which the jury considered defendant's alleged prior felony convictions, defendant was placed in shackles, although the reason for such physical restraint is not revealed in the record. During this proceeding, defendant was called to testify. Both counsel and the court discussed the presence of the physical restraints, and the fact such restraints were visible to the jury. Defense counsel voiced his concern regarding the physical restraints, and requested that defendant testify while seated at the counsel table. The court denied this request and ruled if defendant testified, he would "testify in the normal manner."

A criminal defendant may not be physically restrained during the progress of his trial unless the court, in its discretion, believes there is evident necessity for such restraints. (*People* v. *Harrington* (1871) 42 Cal. 165, 168.) This rule has been reaffirmed in more recent cases of the California courts. (See *People* v. *Sheldon* (1989) 48 Cal.3d 935, 945-946 [258 Cal.Rptr. 242, 771 P.2d 1330]; *People* v. *Allen* (1986) 42 Cal.3d 1222, 1261 [232 Cal.Rptr. 849, 729 P.2d 115].) Conditions which constitute "evident necessity" include violence or threats of violence by defendant, threats of escape, or other nonconforming behavior which the court finds to be a security problem. (*People* v. *Duran* (1976) 16 Cal.3d 282, 291 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1].) In the case of *People* v. *Duran* the rule of *Harrington* was reaffirmed. "[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints. . . . [I]n any case where physical restraints are used, those restraints should be as unobtrusive as possible. . . ." (16 Cal.3d at pp. 290-291.) *Duran* further held "[t]he imposition of physical restraints in the absence of a record showing violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion." (*Id.* at p. 291.)

The People do not argue any conduct of defendant necessitated physical restraints. No reasons for shackling defendant appear in the record.

---

*See footnote, *ante*, page 1107.

■ As stated in *Duran*, "[t]he court cannot adopt a general policy of imposing such restraints upon prison inmates charged (with violent crimes) unless there is a showing of necessity on the record." (16 Cal.3d at p. 293.) ■ Therefore, we conclude it was an abuse of discretion to shackle defendant.

The People argue defense counsel did not make a timely objection to the physical restraints placed upon defendant, as required by *People* v. *Thompkins* (1987) 195 Cal.App.3d 244, 254 [240 Cal.Rptr. 516] and *People* v. *Jacobs* (1989) 210 Cal.App.3d 1135, 1143 [258 Cal.Rptr. 734]. However, the record does reflect defense counsel's request to the court not to prejudice defendant by requiring defendant to testify from the witness stand. Defense counsel suggested defendant be allowed to testify from counsel table. The court denied this request and ordered defendant to testify in the normal manner, without addressing the issue of prejudicing defendant. This order was an abuse of discretion for the reasons explained above.

The court in *Duran* further stated that "it is manifest that the shackling of a criminal defendant will prejudice him in the minds of the jurors." (16 Cal.3d. at p. 290.) Although defendant had been found guilty during the first proceeding in his bifurcated trial, the trial was not concluded until the felony enhancements were considered by the jury. Thus, the physical restraints could potentially prejudice the jurors' decision regarding defendant's prior felonies. *Solomon* v. *Superior Court* (1981) 122 Cal.App.3d 532, 535 [177 Cal.Rptr. 1], acknowledges although "the *Duran* opinion emphasizes the possible prejudice in the minds of the jurors, it also calls attention to other values which are involved, particularly 'the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand. . . .' " (Citing *Duran, supra,* 16 Cal.3d at p. 290).

■ Every person accused of criminal conduct has a constitutional right to trial by a fair and impartial jury. (U.S. Const., Amend. VI; Cal. Const., art. I, § 16.) Therefore, in cases where physical restraints are imposed in view of the jury, the court is required to instruct the jury sua sponte that such restraints should have no bearing on the determination of defendant's guilt. (*Duran, supra,* 16 Cal.3d at p. 292.) ■ In the present case, defendant was restrained in shackles at the time he took the witness stand to testify as to prior felony convictions. The restraints were visible to the jury because defendant approached the witness stand while restrained. The court failed to instruct the jury that the restraints placed on defendant should have no bearing on the issue of guilt.

The harmless error standard applicable to shackling cases is unsettled. In *Duran* the court applied the *Watson* standard, stating "[w]e express no opinion whether any one or more of the errors herein resulted in deprivation of any federal constitutional right of sufficient stature to require reversal based upon the rule of *Chapman* v. *California*, (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]." (*Duran, supra,* 16 Cal.3d at p. 296, fn. 15.) In *People* v. *Jacla* (1978) 77 Cal.App.3d 878, 891 [144 Cal.Rptr. 23], the court applied the *Chapman* standard. In the present case the errors were harmless under either standard.

Jackson took the witness stand to testify regarding his prior felony convictions. Under cross-examination by the People, defendant testified that he was convicted of the crime of robbery in May of 1981, and entered into a plea bargain to another charge of robbery in August of 1981. Defendant also testified that in 1989 he was convicted for possession of a controlled substance. Thus, defendant admitted the priors alleged by the People. Defendant's testimony is conclusive evidence that a more favorable result would not have been reached absent the trial court's errors.

Therefore, the abuse of discretion and failure to properly instruct the jury regarding the physical restraints on defendant were harmless errors.

VI. THE WRIT OF HABEAS CORPUS IS DENIED WITHOUT PREJUDICE FOR
    FAILURE TO PRESENT COMPETENT EVIDENCT TO SUPPORT THE
    ALLEGATIONS MADE THEREIN.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments are affirmed. The petition of Derrick Jackson for a writ of habeas corpus is denied.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellants' petition for review by the Supreme Court was denied June 17, 1992.

---

*See footnote, *ante*, page 1107.