[No. E009514. Fourth Dist., Div. Two. Apr. 20, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY JACKSON et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I, IV, subdivision 1, VI, subdivision 4, and the first paragraph of part VIII of this opinion are certified for publication.

**COUNSEL**

Handy Horiye, Anthony J. Dain and Jan Stiglitz, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.—**

I

Defendants Conway, Robinson, and Jackson were each convicted by a jury of various attempted murder, kidnapping, burglary, attempted robbery, and assault offenses arising out of an attempted robbery of a check-cashing business, and a subsequent shoot-out with sheriff's deputies.

On appeal, they each raise numerous trial and sentencing issues. We consider those issues in the sequence in which they arose at trial.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1818.

## IV Trial Issues

### 1. *Shackling of Defendants During Trial.*

All three defendants argue that the trial court abused its discretion and committed prejudicial error because they were shackled during the trial.

The facts are relatively undisputed. Defendants were not shackled during voir dire. However, at the beginning of trial they were in leg irons which were visible to the jury. Defendants objected to the sudden shackling.

#### a. *The Hearing of October 10, 1990.*

In response to the defendants' objections, the trial court said: "Well, the security in this trial is going to be left up to the sheriff and my bailiff." After further discussion, the court said: "Okay. Look, let me short-circuit you. I understand your concerns. The safety and concerns concerning custody of the defendants, the conduct of this trial that's—*the security is going to be left up to the sheriff.* Now, I will interfere if it appears to the court that it is going to deny them a due process and a fair trial. . . . [¶] *I'm not going to superimpose my judgment on the sheriff's.* . . . I'm not inclined at this point to tell the sheriff what to do or not to do." (Italics added.) Subsequently, the court said, "[W]e all can observe that they have made a change in their security. I have indicated to the bailiff that it's her job. And *she's in charge of security in this courtroom.* And they have made a decision along with the rest of the sheriff's office to proceed in this fashion. I don't intend to change that here this morning." (Italics added.)

#### b. *The Hearing of October 16, 1990.*

At the beginning of proceedings on October 16, 1990, the prosecutor expressed his belief that the record was insufficient to support the shackling order. He was allowed to present testimony outside the presence of the jury to augment the record.

The first witness, a deputy sheriff, testified that he overheard defendant Robinson tell the other two defendants: "When I get out, I'm going to stick every cop I see." He had also been told by other court personnel that the defendants were going to attempt an escape with outside help.

Another deputy testified that he was escorting defendant Robinson in the jail when Robinson "extended his hand and his arm, pointing his finger out making it look like a gun and then went 'boom' and stared me down . . . ."

He also heard defendant Jackson state that, when he took the stand, "he was going to go off . . . ."[3] The deputy was also concerned with courtroom security due to "the fact that there is [*sic*] three defendants, the setting of a courtroom, the natures of the crimes involved." On cross-examination, the deputy stated that his supervisors made the decisions on shackling, although he was unable to identify the individual that made those decisions in this case.

A detective testified that defendants were suspects in three murders and an armed robbery case. He testified that defendant Robinson was a gang member, and that he had been informed that defendants Robinson and Conway had outside resources to assist in an escape.

On cross-examination, the detective stated that he did not know who was in charge of security for the trial, or who was making the day-to-day security decisions. The cross-examination also brought out an additional justification for increased security when the detective testified that he also had information that defendant Robinson was considering an escape attempt with a man who was on trial for murder in an adjoining courtroom.

The trial court then decided, without hearing testimony by the defense, that enough evidence had been presented "to justify the request by the sheriff in that [*sic*] to implement security measures and that's shackling the defendants."

The trial court subsequently attempted to rehabilitate itself by stating, after the luncheon recess on October 16, 1990, that "I don't want to leave you with the impression that the security and the decision to or not to shackle the defendants has been left entirely to the sheriff's department. And perhaps I misspoke when I said that. . . . [¶] I've not aberrated [*sic*] the authority of the court to decide whether or not the shackles should be employed. . . . [¶] . . . I want to make it understood that at no time has the sheriff employed shackles without first seeking permission of the court."

c. *Applicable General Principles.*

Penal Code section 688 states: "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."[4]

In *People* v. *Cox* (1991) 53 Cal.3d 618, 651 [280 Cal.Rptr. 692, 809 P.2d 351], our Supreme Court held that the trial court erred in failing to make a

---

[3]The record is unclear as to whether the officer interpreted the term "go off" to mean escape or merely to get angry.

[4]All section references are to the Penal Code unless otherwise indicated.

proper record before ordering defendant restrained during the proceedings. The court reaffirmed the basic rule of *People* v. *Duran* (1976) 16 Cal.3d 282, 290-291 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1], that a defendant " 'cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.' " (*People* v. *Cox, supra,* 53 Cal.3d 618, 651.) The court defined "manifest need" as a need that "arises only upon a showing of unruliness, an announced intention to escape, or '[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained . . . .' " (*Ibid.*)

In *Duran,* our Supreme Court reviewed the prior cases and said: "We believe that possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the *Harrington [People* v. *Harrington* (1871) 42 Cal. 165] rule. We reaffirm the rule that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (*People* v. *Duran, supra,* 16 Cal.3d 282, 290-291.) Our Supreme Court also said, "The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion. In those instances when visible restraints must be imposed the court shall instruct the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt." (*Id.,* at pp. 291-292.)

The court found that the shackling of the defendant in that case was an abuse of discretion because: "No reasons for shackling the defendant appear on the record. There is no showing that defendant threatened to escape or behaved violently before coming to court or while in court. The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. As our discussion heretofore indicates, the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record. The court's summary denial of the motion to release defendant from his shackles was not based upon such a showing of record and implies a general policy of shackling all inmate defendants accused of violent crimes. We therefore conclude that it was an abuse of discretion to shackle defendant." (*People* v. *Duran, supra,* 16 Cal.3d 282, 293. See,

generally, 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2484, pp. 2982-2984.)

d. *The Trial Court Abused Its Discretion.*

 The trial court here abused its discretion in abdicating its responsibility for courtroom security to the bailiff and/or sheriff's personnel. Even if we accept the trial court's later statement that it did not abdicate its responsibility, it erred in imposing shackles without a prior on-the-record determination of the need for shackles.[5]

*Duran* requires that the trial court, not security personnel, make the determination that there is evident necessity for the restraints used. (*People v. Jacla* (1978) 77 Cal.App.3d 878, 885 [144 Cal.Rptr. 23].) "[T]he determination to impose restraints and the nature of the restraints to be imposed are judicial functions to be discharged by the court, not delegated to a bailiff." (*Ibid.*)

The need for restraints must be shown in each case by evidence of nonconforming behavior, such as violence, disruption of the courtroom, a history of escapes, or evidence of an intention to escape. (*People v. Duran, supra,* 16 Cal.3d 282, 291.)

If the trial court finds that there is a necessity for physical restraints, the physical restraints used should be as unobtrusive as possible. (*People v. Duran, supra,* 16 Cal.3d 282, 291.) If visible restraints are used, the court must give a sua sponte instruction that such restraints should have no bearing on the determination of the defendant's guilt.[6] (16 Cal.3d at pp. 291-292.) No such instruction was given here.

 The trial court therefore abused its discretion and abdicated its responsibilities by leaving the decisions on physical restraints to the discretion of the bailiff and/or other sheriff's personnel,[7] failing to conduct a prior hearing to determine the need for restraints, failing to consider each defendant's history individually on the record, and failing to be sensitive to the

---

[5]Specifically, the court said that it made the original decision to shackle defendants based on information given to it by the bailiff. There is no record of what that information was, and no hearing was held prior to shackling. All in all, the trial court's summary rejection of the defendant's objections after the first instance of shackling was clearly an abuse of discretion which was not cured by the trial court's subsequent general comments.

[6]A form of the required sua sponte instruction is now stated in CALJIC No. 1.04 (1992 New). The Use Note states that the instruction should be given whenever the restraints are in the view of the jury.

[7]The trial court's failure to exercise its authority over courtroom security led to a situation where the deputies did not know who was in charge of courtroom security. The trial court stated that its bailiff, Nancy Holt, was in charge of security, but she did not testify about the

crucial question of whether the restraints were visible to the jury.[8] (*People* v. *Cox*, *supra*, 53 Cal.3d 618, 651.) The trial court also failed to sua sponte instruct the jury that such restraints have no bearing on the determination of guilt.[9] (*People* v. *Jacobs* (1989) 210 Cal.App.3d 1135, 1140 [258 Cal.Rptr. 734].) The trial court also erred in failing to make a full factual record of the type of restraints used, whether they were visible to the jury, and the number of armed officers in the courtroom.[10]

Although the trial court stated that it would intervene in security matters to protect the due process rights of defendants, it failed to do so. In contrast, consider the application of federal constitutional standards described in the case of *Spain* v. *Rushen* (9th Cir. 1989) 883 F.2d 712. Even though the history of escape and violence shown by defendant there justified a measure of additional courtroom security (*id.*, at pp. 719-720), the court held that trial courts should pursue less restrictive alternatives before restraints were imposed. (*Id.*, at p. 721.) The trial court should then weigh the benefits and burdens of shackling against other possible alternatives, such as excluding the defendant from the trial. (*Id.*, at pp. 721, 726.) The court said: "Due process requires that shackles be imposed only as a last resort. In determining whether shackling is a last resort, a trial judge must consider the benefits and burdens associated with imposing physical restraints in the particular case. If the alternatives are less onerous yet no less beneficial, due process

need for physical restraints, or about any other security decision she may have made. Deputies Majors and Hauer each testified that he was in the career criminal detail and that he had been providing court security in this case. The investigating officer, Deputy Olson, testified that he did not know who was in charge of security for the trial. He also testified that he and Deputy Collins (another member of the career criminal detail) made a decision to shackle defendants on at least one occasion.

The confusion about who was in charge apparently led to inconsistent ad hoc decisions by the deputies.

[8]In this regard, the trial court, referring to the visibility of the restraints, stated: "I'm sure they can see them . . . . It's no secret that these gentlemen are in custody." The trial court also stated: "[The leg irons are] not readily apparent. Although I think you can see them, you probably could effectually make note that they were shackled. But it is not as readily apparent as if the bench was head on." The trial court did not consider on the record the taking of steps, such as covering the bottom of the counsel table, that would prevent the jury from seeing the restraints. However, it did state that it would order the officers not to move the defendants around the courtroom in the presence of the jury so that the jury would not see the defendants walk.

[9]Defense counsel stated that they did not request admonishment but defendant Robinson's counsel specifically pointed out the trial court's sua sponte obligation. No admonition was given.

[10]At the original hearing, defendant Jackson's attorney stated that there were six officers in the courtroom. At the second hearing, a deputy testified that there were five officers in the courtroom. The trial court also erred in sustaining an objection, made by the prosecutor on alleged security grounds, to a question which asked Deputy Hauer to state the number of officers assigned to courtroom security in this case.

demands that the trial judge opt for one of the alternatives." (*Id.*, at p. 728.) Here, there was no evidence that the trial court considered physical restraints to be a last resort, rather than a first resort. (*People* v. *Sheldon* (1989) 48 Cal.3d 935, 945 [771 P.2d 1330].)

Contrast also the measures taken in the recent case of *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 94-97 [270 Cal.Rptr. 817, 793 P.2d 23]. The trial court there "conducted not one but two special hearings to determine the need for restraints, carefully considered the evidence of defendant's prior violence and escape attempt as well as more recent threats against the court and bailiffs, and imposed the least visible or obtrusive restraints available outside the presence of the jury." (*Id.*, at pp. 96-97.)

e. *Standard of Review for Prejudice.*

In *Duran*, our Supreme Court considered whether the physical restraints damaged defendant's credibility as a witness. Applying the *Watson*[11] test, the court found that the use of physical restraints and other errors combined to make the errors prejudicial, i.e., that it was reasonably probable that a result more favorable to defendant would have been reached in the absence of the errors. (*People* v. *Duran, supra*, 16 Cal.3d 282, 295-296.) In a footnote, the court said: "We express no opinion whether any one or more of the errors herein resulted in deprivation of any federal constitutional right of sufficient stature to require reversal based upon the rule of *Chapman* v. *California* (1967) 386 U.S. 18, 24 . . . ." (*Duran, supra*, at p. 296, fn. 15.)

In subsequent cases, our Supreme Court has held minor violations of the physical restraint rules to be nonprejudicial without articulating a standard of prejudice. Thus, in *People* v. *Rich* (1988) 45 Cal.3d 1036, 1083-1085 [248 Cal.Rptr. 510, 755 P.2d 960], at least one member of the jury saw defendant being escorted from the courtroom in leg restraints and handcuffs. The court held that brief observations of physical restraints by one or more members of the jury, in the courtroom or outside, did not constitute prejudicial error. (*Ibid.*; cf. *People* v. *Allen* (1986) 42 Cal.3d 1222, 1264-1265 [232 Cal.Rptr. 849, 729 P.2d 115]; *People* v. *Cox, supra*, 53 Cal.3d 618, 652; *People* v. *Jacobs, supra*, 210 Cal.App.3d 1135, 1142 [failure to give sua sponte instruction on restraints tested by the *Watson* standard]; *People* v. *Thompkins* (1987) 195 Cal.App.3d 244, 254 [240 Cal.Rptr. 516] [question regarding defendant's ability to use his legs treated as prosecutorial misconduct and found to be nonprejudicial under *Chapman* standard].)

Several appellate court decisions have held the error nonprejudicial under any standard. (*People* v. *Givan* (1992) 4 Cal.App.4th 1107, 1118 [6

---

[11]*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

Cal.Rptr.2d 339]; *People* v. *Valenzuela* (1984) 151 Cal.App.3d 180, 196 [198 Cal.Rptr. 469], citing *People* v. *Cecil* (1982) 127 Cal.App.3d 769, 779 [179 Cal.Rptr. 736]; *Solomon* v. *Superior Court* (1981) 122 Cal.App.3d 532, 538 [177 Cal.Rptr. 1]; and *People* v. *Jacla, supra,* 77 Cal.App.3d 878, 891.)

By denying review in the most recent case of *People* v. *Givan, supra,* 4 Cal.App.4th 1107, our Supreme Court has left the issue open. In *Givan,* the court stated the general rule that "A criminal defendant may not be physically restrained during the progress of his trial unless the court, in its discretion, believes there is evident necessity for such restraints." (*Id.,* at p. 1116.) The court then held that it was an abuse of discretion to shackle defendant because there was no showing on the record of a necessity to shackle defendant. The court emphasized that physical restraints could potentially prejudice the juror's decision, especially when defendant is forced to testify while restrained. (*Id.,* at p. 1117.)

■ In our view, analysis begins with the *Duran* footnote quoted above. It is whether the shackling "resulted in deprivation of any federal constitutional right of sufficient stature to require reversal based upon the rule of *Chapman* v. *California* . . . ." (*People* v. *Duran, supra,* 16 Cal.3d 282, 296, fn. 15.)

The two cases cited in the footnote are *Donnelly* v. *DeChristoforo* (1974) 416 U.S. 637 [40 L.Ed.2d 431, 94 S.Ct. 1868], and *Cupp* v. *Naughten* (1973) 414 U.S. 141 [38 L.Ed.2d 368, 94 S.Ct. 396]. In *Donnelly,* the issue was whether the prosecutor's improper remarks in closing argument deprived defendant of his constitutional right to a fair trial. The court pointed out that defendant had not been deprived of a specific constitutional right, such as the right to counsel, nor had the prosecutor's remarks so prejudiced a specific right as to amount to a denial of that right. Review was therefore a due process review, and the question was whether the remark "by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process." (*Donnelly, supra,* at p. 643 [40 L.Ed.2d at pp. 436-437].) The court found it did not, because "we simply do not believe that this incident made respondent's trial so fundamentally unfair as to deny him due process." (*Id.,* at p. 645 [40 L.Ed.2d at pp. 437-438].)

In *Naughten,* defendant challenged an instruction on grounds that it deprived him of the presumption of innocence and had shifted the State's burden of proof to him. The Supreme Court held that, even if the instruction was erroneous or undesirable, the conviction could not be overturned unless the instruction violated a constitutional right. The error there, if it was error, was found not to be of constitutional dimension.

The first element of the test is therefore whether the error resulted in the deprivation of a federal constitutional right, i.e., the right to due process. (*People* v. *Duran, supra,* 16 Cal.3d 282, 293, fn. 12.) As *Duran* makes clear, "that possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the *Harrington* rule."[12] (16 Cal.3d at p. 290.)

Shackling also affects the presumption of innocence: "When a defendant is charged with any crime, and particularly if he is accused of a violent crime, his appearance before the jury in shackles is likely to lead the jurors to infer that he is a violent person disposed to commit crimes of the type alleged." (*People* v. *Duran, supra,* 16 Cal.3d 282, 290.)

The potential effect on the presumption of innocence is eliminated if the jury does not see the shackles. "We have consistently found any unjustified or unadmonished shackling harmless where there was no evidence it was seen by the jury." (*People* v. *Tuilaepa* (1992) 4 Cal.4th 569, 583-584 [15 Cal.Rptr.2d 382, 842 P.2d 1142].) We are therefore far less concerned with physical restraints when there is no evidence that the jury saw the defendant in shackles.[13] Thus, measures such as an unobtrusive leg brace concealed under trousers with a draped counsel table may prevent the jury from seeing that the defendant is restrained at all.[14] Conversely, the spectacle of a defendant testifying in wrist and leg chains raises grave concerns. (*People* v. *Givan, supra,* 4 Cal.App.4th 1107.)

We believe that our Supreme Court's footnote reference to *Donnelly* and *Naughten* means that, under certain circumstances, some shackling, even if an abuse of discretion because of a lack of a prior necessity showing, does not rise to the level of constitutional error. Unless the record affirmatively shows that the jury saw the restraints, we believe the error is not constitutional error, and it should therefore be tested under the *Watson* test. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

---

[12]In *Harrington,* our Supreme Court held that any physical restraints imposed without a showing of necessity affect a defendant's constitutional right to defend himself and his statutory right to take the stand in his defense. (*People* v. *Harrington, supra,* 42 Cal. 165, as quoted in *People* v. *Duran, supra,* 16 Cal.3d 282, 288.)

[13]As respondent puts it: "Where the defendant is constrained by leg irons, handcuffs and chains which are highly visible to the jury, the shackles make an emphatic statement that the defendant is a dangerous person. In contrast, where minimal restraints, such as leg restraints, are used and the restraints are not easily visible to the jury (or not shown to have been viewed by the jury), a defendant appears before the court for the most part with the appearance, dignity and self-respect of a free and innocent person."

[14]The restraints are totally concealed when defendant is brought into the courtroom and seated at the draped counsel table before the jury is brought in, and defendant is taken out of the courtroom after the jury has left.

For the same reasons, we believe that, when a trial court abuses its discretion in shackling a defendant, evidence establishing that the jury saw the restraints means that the error rises to the level of constitutional error to be tested under the *Chapman* test.[15] Thus, while a brief glimpse of defendant in shackles would not constitute prejudicial error (*People* v. *Tuilaepa, supra,* 4 Cal.4th 569, 584; *People* v. *Rich, supra,* 45 Cal.3d 1036, 1083-1084), the use of physical restraints in the courtroom without a prior showing of the manifest need for such restraints violates *Duran.* (*People* v. *Duran, supra,* 16 Cal.3d 282, 290-291.) When such restraints are visible to the jury for a substantial length of time without meeting the *Duran* requirements, this trial court error may deprive defendant of his due process right to a fair and impartial jury, and may affect the presumption of innocence. (*People* v. *Jacla, supra,* 77 Cal.App.3d 878, 888.) Accordingly, when such error occurs, it rises to the level of constitutional error. The prejudicial effect of such error must therefore be tested by applying the *Chapman* standard.

The foregoing analysis is the same as the analysis in *Jacla.* The court there considered, as a threshold question, whether the error was of constitutional dimension. In *Jacla,* as here, there was no prior due process determination that restraints were necessary, and the trial court abused its discretion by delegating its discretion to the bailiff. (*People* v. *Jacla, supra,* 77 Cal.App.3d 878, 884-885.) The trial court in *Jacla* also failed to give the cautionary instruction which is required by *Duran* when the restraints are visible to the jury. Such errors were held to be constitutional error, i.e., a violation of defendant's due process rights. (*People* v. *Jacla, supra,* 77 Cal.App.3d 878, 888.) *Jacla* therefore proceeded to test the error against the *Chapman* standard. We think that the *Jacla* analysis is faithful to the letter and spirit of *Duran,* and we therefore proceed to test the error here by the *Chapman* standard. (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at 710-711].)

### f. *The Errors Here Were Not Prejudicial Under the Chapman Test.*

■ Applying the *Chapman* standard here, we find the trial court's errors to be harmless beyond a reasonable doubt. First, the subsequent evidentiary

---

[15]Our analysis is supported by our Supreme Court's recent decision in *People* v. *Woodward* (1992) 4 Cal.4th 376 [14 Cal.Rptr.2d 434, 841 P.2d 954]. In that case, the temporary closure of the courtroom was held not to be a deprivation of the right to a public trial, but rather a denial of defendant's due process right to notice before closure of the courtroom. The due process violation was found to be a trial error evaluated under the *Chapman* test. Applying *Chapman,* the error was found to be harmless beyond a reasonable doubt.

Here, even if the shackling is not a deprivation of the right to defend oneself, and even if it is not a deprivation of the presumption of innocence, it is still a due process violation when the jury sees defendant in shackles. We believe that the error is thus a trial error which should then be evaluated under *Chapman,* for the reasons similar to those discussed in *Woodward.* (Compare *People* v. *Harris* (1992) 10 Cal.App.4th 672, 688-689 [12 Cal.Rptr.2d 758].)

hearing, even though untimely, preserved for the record the reasons why the deputies felt that physical restraints were necessary. Some of these reasons were substantial reasons, even if others were insubstantial. (Cf. *People* v. *Cox, supra,* 53 Cal.3d 618, 651-652.)

Second, it appears that only unobtrusive leg restraints were used. Although the record is unclear regarding the extent to which the jury actually saw defendants in physical restraints, and the type of restraints used, it was possible for the jury to do so. (See fn. 8, *ante; People* v. *Tuilaepa, supra,* 4 Cal.4th 569, 584.) During the viewing of the vehicles, the trial court took steps to minimize the possibility that the jury would see the restraints.

Third, we give some weight to the trial court's later statements that it was aware of the measures being taken by security personnel from the outset, and that it made a determination that the prosecution had made an adequate showing of threatened violence. Nevertheless, the trial court failed to allow defense counsel to participate in that determination, and failed to state the information which was the alleged basis for its decision. Although one deputy testified that the crimes themselves were relevant to show a threat of violence against law enforcement officers, that is not enough. The relevant conduct is defendant's conduct in custody. (*People* v. *Allen, supra,* 42 Cal.3d 1222, 1263; *People* v. *Jacla, supra,* 77 Cal.App.3d 878, 883-884.)

Fourth, there is no evidence in the record that the shackling was pursuant to a general policy of the trial court to shackle all defendants accused of violent crimes. Use of such a general policy would be contrary to *Duran,* which requires the trial judge to make the decision to use physical restraints on a case-by-case basis. (*People* v. *Duran, supra,* 16 Cal.3d 282, 293; *People* v. *Allen, supra,* 42 Cal.3d 1222, 1264, fn. 22; see fn. 7, *ante.)*

Although the entire issue was handled incorrectly by the trial court, we conclude that the errors alleged by defendants were harmless beyond a reasonable doubt. (*People* v. *Givan, supra,* 4 Cal.App.4th 1107, 1116-1118.) The restraints used were apparently inconspicuous, defendants did not testify in chains, and the trial court made a subsequent determination of the need for restraints. In addition, since the bulk of the violent crimes charged consisted of shots fired at police officers, it would be reasonable for the jury to expect some security precautions. "Under such circumstances, we fault only the failure to establish on the record a manifest need for restraints; the procedures implemented could not have influenced either the guilt or penalty verdict." (*People* v. *Cox, supra,* 53 Cal.3d 618, 652. Cf. *People* v. *Tuilaepa, supra,* 4 Cal.4th 569, 584-585; *People* v. *Medina* (1990) 51 Cal.3d 870, 897-898 [274 Cal.Rptr. 849, 799 P.2d 1282]; *People* v. *Prado* (1977) 67 Cal.App.3d 267, 276-277 [136 Cal.Rptr. 521].)

The trial court's error was harmless under the *Chapman* test.

2.-9.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

V-VI, subdivisions 1-3*

. . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Propriety of Sentencing Defendant Robinson With Full Strength Consecutive Sentences for the Gun-use Enhancements.*

■ Defendant Robinson raises a separate but related issue by contending that the trial court erred in sentencing him to "full strength" consecutive sentences for the gun-use enhancements. Since count 13 was the principal term, a full five-year term on that gun-use enhancement was clearly proper under section 1170.1. The issue is whether imposition of full five-year terms on the gun-use enhancements on counts 2 and 7 (which we have previously modified from counts 1 and 4) were proper.[34]

The gun-use enhancements of counts 2 and 7 are enhancements imposed pursuant to sections 12022.5 and 669. They are attached to indeterminate terms imposed under section 1168.

Because they are attached to indeterminate terms, the gun-use enhancements are not subject to the determinate sentencing law, including the provisions of section 1170.1. Subdivision (a) of that section provides, in relevant part: "[W]hen any person is convicted of two or more felonies . . . and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term . . . ." It also provides that: "The subordinate term for each consecutive offense which is a 'violent felony' . . . shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed pursuant to Section . . . 12022.5 . . . ." Since the gun-use enhancements here were imposed pursuant to sections 12022.5 and 669, the determinate sentencing law is inapplicable here.

---

*See footnote, *ante*, page 1818.

[34]Since we have stayed execution of the sentence on the gun-use enhancements on counts 1 and 4, any issue as to those counts is moot.

In *People* v. *McGahuey* (1981) 121 Cal.App.3d 524 [175 Cal.Rptr. 479], the court pointed out that indeterminate sentences are imposed pursuant to section 1168, and determinate sentences are imposed pursuant to section 1170. Section 669 provides that, when a person is convicted of two or more crimes, the second or subsequent judgement shall direct whether the terms of imprisonment shall run consecutively or concurrently, and it provides that a determinate sentence shall be served first. The court then states: "It is of great significance that the wording of section 1170.1, subdivision (a), specifically limits its application to consecutive terms imposed under 'Sections 669 *and* 1170.' (Italics added.) Thus, it must follow that section 1170.1, subdivision (a), cannot apply to consecutive terms imposed under sections 669 *and* 1168, the case here." (121 Cal.App.3d at pp. 531-532.)

The facts that the sentence imposed on the gun-use enhancements is itself for a determinate period does not mean that it is subject to the subordinate term provisions of section 1170.1. "[T]he fact that enhancement is determinate does not render it subordinate within the meaning of section 1170.1." (*People* v. *Reyes* (1989) 212 Cal.App.3d 852, 858 [260 Cal.Rptr. 846].)[35]

Accordingly, we find that section 1170.1 does not apply to a gun-use enhancement attached to an offense which carries an indeterminate term of imprisonment.

There is another reason why the gun-use enhancement is not a subordinate term. Each reference to a "subordinate term" in section 1170.1, subdivision (a) refers to the term of imprisonment for the *offense*. Thus, the statute provides if the offense is not a violent felony, the consecutive term of imprisonment *for that offense* shall be one-third of the middle term of imprisonment for such offense and shall not include any enhancements which would otherwise attach to the offense. If the offense is a violent felony then the permissible term of imprisonment *for that offense* is one-third of the middle term of imprisonment plus one-third the term of imprisonment for the enhancement. If the offense itself is not subject to section 1170.1, subdivision (a), enhancements arising as a result of that offense likewise are not subject to that subdivision. Since the indeterminate offense here was not subject to that subdivision, the enhancement attached to that offense is also not subject to that subdivision. In other words, "when one term is determinate and the other is indeterminate, neither is principal or subordinate; instead, each is calculated without reference to the other." (*People* v. *Reyes, supra*, 212 Cal.App.3d 852, 858.)

---

[35]Defendants rely on *People* v. *Monigold* (1983) 139 Cal.App.3d 485 [188 Cal.Rptr. 698]. That case concerns the right of a prisoner to earn conduct credits on the determinate enhancement. It does not support the conclusion that the term of the enhancement should be considered a subordinate term.

As California Rules of Court, rule 451 put it: "When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed under section 1168 in the same or another proceeding, the judgment shall specify the determinate term imposed under section 1170 computed without reference to the indeterminate sentence, shall order that the determinate term shall be served consecutive to the sentence under section 1168, and shall identify the proceedings in which the indeterminate sentence was imposed."

Accordingly, the trial court did not err in imposing consecutive five-year sentences on the two gun-use enhancements. The two aggravated consecutive nonstayed five-year terms on those enhancements (counts 2 and 7) were therefore proper, and execution of a consecutive sentence on the five-year enhancement on the principal term (count 13) was equally proper.

## VII SENTENCING ISSUES - DEFENDANT JACKSON*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VIII DISPOSITION

The judgments are affirmed for each defendant on all counts except count 5 (assault with a firearm in violation of § 245, subd. (a)(2)). The conviction of each defendant on count 5 is reversed.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

Timlin J., and McDaniel J.,† concurred.

A petition for a rehearing was denied May 6, 1993, and appellants' petition for review by the Supreme Court was denied July 15, 1993.

---

*See footnote, *ante,* page 1818.

†Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.