48 Cal.Rptr.3d 857 (2006)
143 Cal.App.4th 256
The PEOPLE, Plaintiff and Respondent,
v.
Melvin SIMMONS, Jr., Defendant and Appellant.
No. H026450.
Court of Appeal of California, Sixth District.
September 22, 2006.
*859 Rudy Kraft, under appointment by the Court of Appeal, for Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Gregg E. Zywicke, Deputy Attorney General, Ross C. Moody, Deputy Attorney General, for Respondent.
*858 McADAMS, J.
Defendant Melvin Simmons was charged with two counts of possessing a controlled substance in prison. A jury convicted him of one count and acquitted him of the other. On appeal, defendant challenges his appearance at trial in shackles, which he claims constitutes judicial error. Defendant also asserts ineffective assistance of counsel, on the ground that his attorney permitted him to appear at trial in restraints and in prison garb. Reaching only the first claim, we conclude that the trial court erred because its determination to restrain defendant was not individualized, adequately supported, and made on the record, and we further conclude that the error was prejudicial. We therefore reverse the judgment of conviction.

BACKGROUND
In April 2003, the Monterey County District Attorney filed a criminal information against defendant, charging him with two counts of possessing a controlled substance in prison. (Pen.Code, § 4573.6.) The first count charged defendant with possession of marijuana; the second charged him with possession of methamphetamine. The information also alleged that defendant had three prior strikes within the meaning of the three strikes law. (Pen.Code, § 1170.12, subd. (c)(2)(a).)
The events leading to the criminal charges against defendant took place in August 2002. Defendant was then a prisoner at Salinas Valley State Prison. The following facts were adduced at defendant's jury trial, which began in June 2003.

THE PROSECUTION CASE
Prison correctional officer Faustino Mora was on duty in a control room when he noticed a length of line or string, called a "fish line," running between two cells on the upper tier of the cellblock. The fish line originated in cell 103 and was heading towards cell 211. Cell 103 was occupied by defendant and his cellmate, Randy Tillis; *860 cell 211 was assigned to inmate Kevin Lewis. Mora saw a large white envelope attached to the line. He notified floor staff that there was a fish line coming across the pod.
At that time, correctional officer Gregory Bailey was already on his way to speak with defendant. Bailey observed defendant standing at the window of his cell and then ducking down, and he saw Lewis do the same in his cell. Bailey identified defendant as the person at the door and window of cell 103; he testified to seeing defendant's cellmate, Tillis, sitting on his bunk. Bailey heard defendant's voice coming from cell 103, yelling "cut me loose, cut me loose." Bailey walked over to the fish line, stepped on it, grabbed it, and pulled it toward himself. The line broke.
Attached to the fish line, Bailey found a rolled-up paper that contained a plastic baggie with a green leafy substance. A criminalist testified that the baggie contained 2.34 grams of marijuana. The paper  a handwritten note or "kite"  read in part: "So enclosed please find half the pot I got. In honor of my word." An expert witness compared the writing on the note with samples of defendant's handwriting from his prison file. He testified to his conclusion that defendant probably wrote the note.
After the fish line had been broken, Bailey and his sergeant searched defendant's cell. They found a plastic baggie containing a white powder on the top shelf in the cell, along with papers bearing defendant's name. A criminalist testified that the baggie contained .26 grams of methamphetamine.

THE DEFENSE CASE
Defendant testified in his own defense. He was impeached with his prior felonies, including robbery, attempted robbery, kidnapping for robbery, forcible rape, and assault.
Defendant admitted that there was a fish line going out of the cell he shared with Tillis, but he denied controlling the line. Defendant also testified that a fish line could not run from cell 103 to cell 211. He based that testimony on his experience of having been in prison for 16 years and 164 days. Defendant also denied writing the note.
Defendant further testified that the methamphetamine found in his cell was not his, stating: "I'm not responsible for the drugs that was in that cell." Defendant also indicated that the shelf where the methamphetamine was found was used by his cellmate, not by him.

TRIAL PROCEEDINGS
Defendant appeared at trial wearing his prison uniform and shackles.
On the first day of trial, prior to the presentation of evidence, the following exchange between defense counsel and the court took place in the jury's presence: "COUNSEL: I have one other thing, your Honor. I mentioned this earlier, but could I have at least one arm unshackled? ¶ THE COURT: Yes, indeed. ¶ COUNSEL: Thank you."
The trial court later instructed the jury pursuant to CALJIC 1.04 as follows: "The fact that physical restraints have been placed on the defendant must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely."
After deliberating, the jury found defendant guilty of possessing the marijuana *861 found attached to the fish line, but it acquitted him of possessing the methamphetamine found in his cell.
Consistent with the jury's verdict, the court entered a judgment of conviction on the first count of the information. A bench trial followed, in which the court found true one of the prior strike allegations. The court later sentenced defendant to the mid-term of three years, doubled to six years because of the strike.

APPELLATE PROCEEDINGS
In September 2003, defendant filed this timely appeal. His two appellate contentions both relate to his appearance at trial in shackles and prison garb. Defendant contends (1) that the trial court erred in illegally restraining him during trial and (2) that his trial counsel rendered ineffective assistance by failing to object to the restraints and prison uniform.
In November 2004, in a separate proceeding, defendant petitioned this court for a writ of habeas corpus, which raised the question of ineffective assistance of counsel. (H028137.) We ordered a hearing in the superior court on that claim.
In April 2005, we stayed defendant's appeal pending the completion of trial court proceedings on the habeas petition. In December 2005, the trial court conducted an evidentiary hearing, took the matter under submission, and thereafter denied the petition. In its written ruling, the court found "that even if counsel's decision was determined to constitute ineffective assistance, there is no reasonable probability of a different result based on that decision."
The trial court's ruling was received in this court in March 2006. Defendant's appellate counsel then requested a further stay of this appeal, based on his intention to file a new habeas corpus petition. We granted the stay, but we dissolved it shortly thereafter, without prejudice to defendant's right to bring a second petition for a writ of habeas corpus.

CONTENTIONS
As noted above, defendant maintains on appeal (1) that the trial judge erred by restraining him during trial and (2) that his trial counsel performed incompetently in failing to object to the restraints and jail garb. The People assert that defendant waived his first claim (judicial error), because he did not object to the restraints at trial. The People also dispute both of defendant's contentions on the merits.

DISCUSSION
We begin our analysis by summarizing the legal principles governing restraints. Next, we reach and analyze the merits of defendant's claim of judicial error. Based on our analysis of that contention, we need not consider defendant's claim of ineffective assistance of counsel.

I. Restraints  Legal Framework

A. Governing Principles
In the early case of People v. Harrington, the California Supreme Court denounced the imposition of unnecessary "restraints upon a prisoner" during trial. (People v. Harrington (1871) 42 Cal. 165, 168.) More than a century later, in People v. Duran, our high court declared its continued adherence to the Harrington rule. (People v. Duran (1976) 16 Cal.3d 282, 288-293, 127 Cal.Rptr. 618, 545 P.2d 1322.) As the Duran court said: "We reaffirm the rule that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (Id. at pp. 290-291, 127 Cal.Rptr. 618, 545 P.2d 1322, fn. omitted.) "We believe that possible prejudice *862 in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the Harrington rule." (Id. at p. 290, 127 Cal.Rptr. 618, 545 P.2d 1322. Accord, People v. Hill (1998) 17 Cal.4th 800, 841, 72 Cal.Rptr.2d 656, 952 P.2d 673; see also Pen.Code, § 688.) "In assessing the impact on the right to a fair trial, the first and last of these considerations predominate." (People v. Cox (1991) 53 Cal.3d 618, 652, 280 Cal.Rptr. 692, 809 P.2d 351. Accord, People v. Anderson (2001) 25 Cal.4th 543, 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.)
As Duran makes clear, "the trial judge must make the decision to use physical restraints on a case-by-case basis." (People v. Duran, supra, 16 Cal.3d at p. 293, 127 Cal.Rptr. 618, 545 P.2d 1322.) Furthermore, "in any case where physical restraints are used those restraints should be as unobtrusive as possible, although as effective as necessary under the circumstances." (Id. at p. 291, 127 Cal.Rptr. 618, 545 P.2d 1322, fn. omitted.) The requisite showing "in support of the court's determination to impose physical restraints must appear as a matter of record and, except where the defendant engages in threatening or violent conduct in the presence of the jurors, must otherwise be made out of the jury's presence." (Ibid.) The required showing "may be satisfied by evidence, for example, that the defendant plans to engage in violent or disruptive behavior in court, or that he plans to escape from the courtroom [citation]." (People v. Anderson, supra, 25 Cal.4th at p. 595, 106 Cal.Rptr.2d 575, 22 P.3d 347.) A "formal hearing as such" is not required, but "the court is obligated to base its determination on facts, not rumor and innuendo . . . ." (People v. Cox, supra, 53 Cal.3d at pp. 651-652, 280 Cal.Rptr. 692, 809 P.2d 351.) "In those instances when visible restraints must be imposed the court shall instruct the jury sua sponte that such restraints should have no bearing on the determination of the defendant's guilt." (People v. Duran, at pp. 291-292, 127 Cal.Rptr. 618, 545 P.2d 1322.)

B. Appellate Review
"An appellate court reviews a trial court's ruling on a motion to limit physical restraints for abuse of discretion." (People v. Alvarez (1996) 14 Cal.4th 155, 192, 58 Cal.Rptr.2d 385, 926 P.2d 365.) The restrictions discussed above operate to narrow the trial court's discretion, however. (People v. Ayala (2000) 23 Cal.4th 225, 252, 96 Cal.Rptr.2d 682, 1 P.3d 3.) For that reason, imposing "physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion." (People v. Duran, supra, 16 Cal.3d at p. 291, 127 Cal.Rptr. 618, 545 P.2d 1322.)
Even where an abuse of discretion is established, reversal is warranted only on a showing "that physical restraints impaired the fairness of defendant's trial and thus caused prejudice." (People v. Anderson, supra, 25 Cal.4th at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.) In assessing the impact of restraints on the defendant's right to a fair trial, the two most important considerations are the potential for juror prejudice and the impact on the defendant's decision to testify. (Id. at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.)
The California Supreme Court has not explicitly decided whether trial court error in approving restraints is subject to harmless error analysis under Watson *863 or Chapman.[1] (See People v. Mar (2002) 28 Cal.4th 1201, 1225, fn. 7, 124 Cal.Rptr.2d 161, 52 P.3d 95; People v. Duran, supra, 16 Cal.3d at p. 296, fn. 15, 127 Cal.Rptr. 618, 545 P.2d 1322.) But at least one appellate court has examined the question. (People v. Jackson (1993) 14 Cal.App.4th 1818, 1827-1830, 18 Cal. Rptr.2d 586.) That court concluded: "Unless the record affirmatively shows that the jury saw the restraints, we believe the error is not constitutional error, and it should therefore be tested under the Watson test." (Id. at p. 1829, 18 Cal.Rptr.2d 586.) On the other hand, the court held, "evidence establishing that the jury saw the restraints means that the error rises to the level of constitutional error to be tested under the Chapman test." (Id. at p. 1830, 18 Cal.Rptr.2d 586.)

C. Forfeiture
The People correctly observe that criminal defendants forfeit their objections to being restrained at trial by failing to raise them below. "It is settled that the use of physical restraints in the trial court cannot be challenged for the first time on appeal. Defendant's failure to object and make a record below waives the claim here." (People v. Tuilaepa (1992) 4 Cal.4th 569, 583, 15 Cal.Rptr.2d 382, 842 P.2d 1142.)
In reply, defendant first argues that a claim of illegal restraint should not be subject to forfeiture. But that argument is foreclosed by California Supreme Court precedent. (People v. Tuilaepa, supra, 4 Cal.4th at p. 583, 15 Cal.Rptr.2d 382, 842 P.2d 1142.)
Defendant further asserts that the claim was not waived in this case. Defendant cites his counsel's pretrial request for unshackling at least one of his arms. Although defendant acknowledges that "this may not be the most artful way to have preserved the issue," he nevertheless urges that his counsel's "request was enough to trigger the trial court's already existing mandatory duty not to restrain [him] without a showing of a manifest need."
We accept defendant's argument that he preserved his claim of trial court error, and we analyze this important issue on the merits.

II. Application  Judicial Error Claim

A. Error
As explained above, the decision of whether to restrain a defendant during trial is made "on a case-by-case basis." (People v. Duran, supra, 16 Cal.3d at p. 293, 127 Cal.Rptr. 618, 545 P.2d 1322.) The court must "determine for itself, whether adequate justification existed to *864 physically restrain defendant in the courtroom." (People v. Hill, supra, 17 Cal.4th at p. 842, 72 Cal.Rptr.2d 656, 952 P.2d 673.) There must be evidence to support the trial judge's determination to use restraints: "A shackling decision must be based on facts, not mere rumor or innuendo." (People v. Anderson, supra, 25 Cal.4th at p. 595, 106 Cal.Rptr.2d 575, 22 P.3d 347.) The court need not conduct a formal hearing. (People v. Cox, supra, 53 Cal.3d at pp. 651-652, 280 Cal.Rptr. 692, 809 P.2d 351.) But the required showing "in support of the court's determination to impose physical restraints must appear as a matter of record . . . ." (People v. Duran, supra, 16 Cal.3d at p. 291, 127 Cal.Rptr. 618, 545 P.2d 1322. Accord, People v. Anderson, at p. 595, 106 Cal.Rptr.2d 575, 22 P.3d 347.)
From the record before us, it appears that the trial court failed to make and support its decision on the record, as precedent from our state's high court requires. That failure constitutes error.
Furthermore, we have concerns whether restraints are imposed as a matter of general policy where prison inmates appear in court. As the Duran court stated: "The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints . . . . The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record." (People v. Duran, supra, 16 Cal.3d at p. 293, 127 Cal. Rptr. 618, 545 P.2d 1322.)
In this case, there is no direct evidence that the court has a general policy or pattern of requiring defendants to be shackled, without first making a factually-supported, on-the-record determination of individualized necessity, as required by law. But we do find cause for concern in the trial court's December 2005 ruling on defendant's habeas corpus petition, which states that the jury was "instructed that the defendant's clothing and restraints were standard procedure for inmates being brought to court, and should not and could not be considered in any way as evidence in the case."[2]
We thus must consider whether the error was prejudicial.[3]

B. Prejudice

1. Standard of Review
In this case, the original appellate record contains no affirmative evidence that the jury saw defendant's restraints. Nevertheless, because the court instructed the jury pursuant to CALJIC 1.04, it is reasonable to infer that defendant's restraints were visible. Furthermore, at the December *865 2005 hearing on defendant's petition for habeas corpus, it was "established by stipulation of the parties that the restraints were visible and were observed by the jury."
Because the jury saw the restraints, we assume (without deciding) that the Chapman standard applies. (See, People v. Jackson, supra, 14 Cal.App.4th at p. 1830, 18 Cal.Rptr.2d 586, discussing Chapman v. California, supra, 386 U.S. at pp. 23-24, 87 S.Ct. 824.) We thus consider where the judicial error committed in this case was harmless beyond a reasonable doubt. (People v. Jackson, at p. 1830, 18 Cal. Rptr.2d 586.)

2. Analysis
The question before us is whether "physical restraints impaired the fairness of defendant's trial and thus caused prejudice." (People v. Anderson, supra, 25 Cal.4th at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.) In answering that question, the critical factors are the impact on the defendant's ability to participate at trial and the potential for juror prejudice. (Id. at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.) Applying those two factors here, we find prejudice.

(a) Defendant's Ability to Participate at Trial
We first consider the impact of the restraints on defendant's participation at trial. As the California Supreme Court explained in the Anderson case, decided in 2001, it has "consistently held that courtroom shackling, even if error, was harmless if there is no evidence that ... the shackles impaired or prejudiced the defendant's right to testify or participate in his defense." (People v. Anderson, supra, 25 Cal.4th at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347 [no prejudice, where "no evidence or claim" that the restraints influenced defendant's decision not to testify].) But as the court observed the following year in the Mar case: "Even when the jury is not aware that the defendant has been compelled to wear [a restraint]"  there, a stun belt  its presence "may preoccupy the defendant's thoughts, make it more difficult for the defendant to focus his or her entire attention on the substance of the court proceedings, and affect his or her demeanor before the jury  especially while on the witness stand." (People v. Mar, supra, 28 Cal.4th at p. 1219, 124 Cal.Rptr.2d 161, 52 P.3d 95.) That observation reinforces these similar statements in the court's 1998 decision in People v. Hill: "Although the record does not disclose the jury ever saw or heard the chains restraining defendant, the use of such restraints (assuming for argument they were unjustified) raises other possibilities of prejudice. Shackles may affect a defendant's mental state during trial. . . . Shackles may also impair a defendant's ability to cooperate or communicate with counsel. [Citations.] The pain and `consequential burden placed on the body and mind of the defendant' [citation] must also be considered." (People v. Hill, supra, 17 Cal.4th at p. 846, 72 Cal.Rptr.2d 656, 952 P.2d 673.) Hill, in turn, reinforces the high court's pronouncements in the leading case of Duran, where the court described the long common law history holding "that the prisoner should be unshackled in the courtroom so as to have `use of his reason, and all advantages, to clear his innocence' [citation]." (People v. Duran, supra, 16 Cal.3d at p. 288, 127 Cal.Rptr. 618, 545 P.2d 1322, additional internal quotation marks omitted.) "Recognizing these common law pronouncements," the Duran court said, "we held over 100 years ago in People v. Harrington (1871) 42 Cal. 165, that `any order or action of the Court which, without evident necessity, imposes physical burdens, pains and restraints upon a prisoner during *866 the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf.' (Id., at p. 168.)" (Ibid.)
Applying those precepts to the case before us, we cannot say with assurance  beyond a reasonable doubt  that the restraints placed on defendant had no prejudicial effect on his mental state, particularly while he was testifying. "From the cold record before us, it is, of course, impossible to determine with any degree of precision what effect the presence of the [restraint] had on the substance of defendant's testimony or on his demeanor on the witness stand." (People v. Mar, supra, 28 Cal.4th at p. 1224, 124 Cal.Rptr.2d 161, 52 P.3d 95.) But the possibility of an impact on defendant's mental faculties or demeanor cannot be dismissed. (Cf., ibid. [defendant "clearly stated that the device made it difficult for him to think clearly and that it added significantly to his anxiety"].) And such potential impact is crucial in this case. Here, to a significant extent, "the resolution of this matter turned [ ] on the jury's evaluation of the credibility of the witnesses, an evaluation that depended in large part upon the demeanor of each witness on the witness stand." (Ibid.) Additionally, "the record indicates that the evidence was not totally one-sided." (Ibid.)

(b) Jury Impact
The second key factor is the impact of the restraints on the jury's perception of defendant. (People v. Anderson, supra, 25 Cal.4th at p. 596, 106 Cal.Rptr.2d 575, 22 P.3d 347.)
In this case, we acknowledge, the jury was aware that defendant was a state prison inmate from the very nature of the charges. Furthermore, it acquitted him on one of the two counts with which he was charged. Additionally, the trial court admonished the jury to disregard the restraints, and there is no evidence that the jury disobeyed the instruction. (Cf., e.g., People v. Sheldon (1989) 48 Cal.3d 935, 946, 258 Cal.Rptr. 242, 771 P.2d 1330.) Nevertheless, we emphasize, an after-the-fact admonition is no substitute for a particularized hearing and judicial efforts to keep any needed restraints as unobtrusive as possible, both of which are required by Duran. (People v. Duran, supra, 16 Cal.3d at pp. 291, 293, 127 Cal.Rptr. 618, 545 P.2d 1322.)
Furthermore, as explained above, jury impact is only one consideration. "Although the court in Duran emphasized the adverse effect that visible restraints might have upon a jury, it also relied upon the circumstance ... that the imposition of such a restraint upon a defendant during a criminal trial `inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense....'" (People v. Mar, supra, 28 Cal.4th at p. 1219, 124 Cal.Rptr.2d 161, 52 P.3d 95 [reversing conviction even though jury did not see stun belt restraint].)

(c) Other Factors
In discussing prejudice, it is noteworthy that there were significant factual disputes in this case. Combined with these disputes, two evidentiary matters, when considered, show how far this case is from open and shut. First, an otherwise weak handwriting analysis used a writing exemplar purportedly from defendant's file *867 without foundation. Second, in anticipation of an issue raised at the preliminary hearing that running a kite between cells was impossible because there were steel plates welded to the doors, the prosecution put on testimony of an investigator who claimed to have had the possibility demonstrated to him by another prison inmate, seemingly without the necessary foundation.

C. Conclusion
The California Supreme Court has consistently denounced the imposition of unnecessary restraints on a defendant during trial. The practice is condemned because of "possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant[]. . . ." (People v. Duran, supra, 16 Cal.3d at p. 290, 127 Cal.Rptr. 618, 545 P.2d 1322.) We join our high court in denouncing unnecessary shackling as an "affront to human dignity," which can foment "disrespect for the entire judicial system . . . ." (Ibid.) And we heartily endorse statements by both the California Supreme Court and the United States Supreme Court that physical restraints should be used only as a last resort. (Ibid., citing Illinois v. Allen (1970) 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353.)
We strongly admonish the trial court that shackling decisions must be made on the record and on the basis of demonstrated, particularized necessity. In this case, because the record contains no evidence that the trial court made such a determination, we reach the inescapable conclusion that the court erred.
Furthermore, we conclude, the judicial error in this case was not harmless beyond a reasonable doubt. (See People v. Jackson, supra, 14 Cal.App.4th at p. 1830, 18 Cal.Rptr.2d 586.) In this case, the most important factor supporting that conclusion is the effect on defendant's mental state at trial, particularly while he was testifying.
Because the trial court committed prejudicial error, reversal of the judgment of conviction is compelled.

III. Counsel Error Claim
As noted above, defendant also frames his challenge to his shackling at trial as a claim for ineffective assistance of counsel. As part of that claim, he also challenges his counsel's decision to permit him to appear at trial in prison garb. In light of our reversal based on judicial error, we need not and do not reach defendant's separate challenge to his counsel's performance.

SUMMARY OF CONCLUSIONS
As to defendant's claim of judicial error, we agree with defendant that the trial court erred because its determination to restrain him was not individualized, adequately supported, and made on the record. Furthermore, under the circumstances of this case, the error was not harmless beyond a reasonable doubt. In light of our disposition, we need not and do not reach defendant's claim of ineffective assistance of counsel.

DISPOSITION
The judgment of conviction is reversed.
RUSHING, P.J., and PREMO, J., concur.
NOTES
[1] Generally speaking, to the extent that a criminal defendant's appeal raises federal constitutional claims, courts apply the Chapman rule and examine the record to determine whether any error was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705; People v. McClary (1977) 20 Cal.3d 218, 230, 142 Cal.Rptr. 163, 571 P.2d 620, overruled on other grounds in People v. Cahill (1993) 5 Cal.4th 478, 509, fn. 17, 20 Cal.Rptr.2d 582, 853 P.2d 1037.) To the extent that the appeal rests on other grounds, the Watson standard is generally employed. (People v. Watson (1956) 46 Cal.2d 818, 836-838, 299 P.2d 243; People v. Flood (1998) 18 Cal.4th 470, 490, 76 Cal.Rptr.2d 180, 957 P.2d 869; People v. Cahill, at p. 492, 20 Cal.Rptr.2d 582, 853 P.2d 1037 [Watson "represents the harmless-error test generally applicable under current California law"].) Under Watson, reversal is warranted only on a determination that it is reasonably probable that defendant would have obtained a more favorable result in the absence of any error. (People v. Watson, supra, 46 Cal.2d at pp. 836-838, 299 P.2d 243.)
[2] Our concern over that statement is allayed  somewhat  by recalling that the actual instruction given in this case mentions no such "standard procedure" for restraining inmates in court  a procedure that unquestionably would be improper. (See, e.g., Deck v. Missouri (2005) 544 U.S. 622, 626, 125 S.Ct. 2007, 161 L.Ed.2d 953; People v. Duran, supra, 16 Cal.3d at p. 293, 127 Cal.Rptr. 618, 545 P.2d 1322.)
[3] Defendant ardently contends that the error "must be treated as reversible per se" and that California's courts should "institute a policy of automatically reversing" the judgment of conviction "in any case when defendants are illegally restrained." As an intermediate appellate court, we are not at liberty to adopt such a policy. Pursuant to binding California Supreme Court precedent, reversal is warranted only on a showing "that physical restraints impaired the fairness of defendant's trial and thus caused prejudice." (People v. Anderson, supra, 25 Cal.4th at pp. 595-596, 106 Cal.Rptr.2d 575, 22 P.3d 347. See also, e.g., People v. Duran, supra, 16 Cal.3d 282, 287, fn. 2, 127 Cal.Rptr. 618, 545 P.2d 1322.)